274 P.3d 526

**STATE of Arizona, Appellee,**

v.

**Martin Abel BUSTAMANTE, Appellant.**

**No. 1 CA–CR 10–0555.**

Court of Appeals of Arizona, Division 1, Department E.

March 29, 2012.

Thomas C. Horne, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Division and Liza–Jane Capatos, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Robert Arentz & Associates, P.C. By Robert Arentz, Phoenix, Attorney for Appellant.

THOMPSON, Judge.

¶ 1 Martin Abel Bustamante (defendant) appeals his convictions and sentences for kidnapping and theft by extortion, both class two dangerous felonies; aggravated assault, a class three dangerous felony; and misconduct involving weapons, a class four felony. He argues on appeal that the evidence was insufficient to support his convictions, and the trial court erred in rejecting his *Batson*[1] challenge. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The evidence at trial, viewed in the light most favorable to upholding the jury's verdicts,[2] was as follows. Adalberto Cano (Cano) and another man[3] kidnapped victim at gunpoint from a retail store parking lot. A witness identified the driver of the kidnappers' vehicle as a heavyset or pregnant female, and the vehicle as a four-door sedan. Victim subsequently called his girlfriend and relayed the kidnappers' demand for her Mer-

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983).

3. As discussed below, the jury could have reasonably found this man to be defendant.

cedes–Benz and $30,000 as ransom. The kidnappers threatened to kill victim if she did not comply with their demands. She cooperated with police, who arranged to drop the Mercedes off at the designated shopping mall with the keys in the gas-cap area as instructed by the kidnappers, and to monitor it.

¶ 3 Cano and defendant arrived at the ransom drop-off point in a small, four-door sedan driven by Brittney Lewis, who was pregnant; police intervened after Cano retrieved the Mercedes key from the gas-cap area and opened the driver's side door. Police found the beaten and bruised victim in the backseat of the kidnappers' vehicle, wearing a t-shirt, boxer shorts, and socks. Defendant was in the front passenger seat. A loaded handgun was visible on the floorboard of the driver's side of the small sedan, within reach of defendant, a convicted felon. Police searched defendant and found the cell phone used to make the ransom calls the night before.

¶ 4 The jury convicted defendant of kidnapping and theft by extortion, class two dangerous felonies; aggravated assault, a class three dangerous felony; and misconduct involving weapons, a class four felony. On the convictions for kidnapping, aggravated assault, and misconduct involving weapons, the court sentenced defendant to concurrent sentences, the longest of which was eleven years. The court also imposed an eleven-year sentence for the conviction of theft by extortion, and ordered it to be served consecutively to the other sentences. Defendant timely appealed.

## DISCUSSION

### A. Sufficiency of the Evidence

 ¶ 5 Defendant argues that the evidence was insufficient to show his "involvement" in the kidnapping, extortion, and aggravated assault, or that he knowingly possessed the handgun on the driver's side floorboard, as necessary for his conviction of misconduct involving weapons. In reviewing the sufficiency of the evidence, we resolve all conflicts in the evidence against defendant. *Girdler*, 138 Ariz. at 488, 675 P.2d at 1307. The credibility of witnesses and the weight given to their testimony are issues for the jury, not the court. *See State v. Just*, 138 Ariz. 534, 545, 675 P.2d 1353, 1364 (App.1983). No distinction exists between circumstantial and direct evidence. *State v. Stuard*, 176 Ariz. 589, 603, 863 P.2d 881, 895 (1993). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).

██ ¶ 6 We find that the evidence, although circumstantial, was sufficient to support the convictions. The indictment charged defendant, Cano, and Brittney Lewis as both principals and accomplices in kidnapping by "knowingly restraining another person with the intent to ... [h]old the victim for ransom, as a shield or hostage"; theft by extortion for "knowingly ... seeking to obtain property ... by means of a threat ... to cause physical injury to anyone by means of a deadly weapon"; and aggravated assault, for "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury" using a deadly weapon. *See* A.R.S. §§ 13–1304(A)(1) (2010), –1804(A)(1) (2010), –1203(A)(2) (2010), and –1204(A)(2) (2010).

¶ 7 The witness to the initial kidnapping in the parking lot testified that two men, one of whom was identified as Cano, forced the victim at gunpoint into a four-door sedan driven by a heavyset or pregnant woman. The victim's girlfriend testified that she received ransom calls that night, relaying threats to kill the victim and demanding her Mercedes–Benz in exchange for his safe return. Police rescued the victim the following day at the ransom drop-off point after Cano, using keys retrieved from the gas-cap area, opened the driver's side door of the Mercedes–Benz. The victim was in the back seat of the kidnappers' vehicle, battered and bruised, wearing only a t-shirt, boxer shorts, and socks. Lewis was the driver of the kidnappers' vehicle, a four-door sedan; defendant was in the front passenger seat. A gun was visible on the front driver's side floorboard of the kidnappers' vehicle near the

center console. Police found the cell phone used to make the ransom calls on defendant.

¶ 8 The jury could reasonably conclude from this circumstantial evidence that defendant was the man observed with Cano forcing the victim at gunpoint into the kidnappers' vehicle at the store parking lot, and accordingly convict him of kidnapping and aggravated assault. The jury could also conclude that defendant made the ransom calls and that he was guilty of theft by extortion. Even if the jury did conclude, however, that defendant was not the man involved in the initial kidnapping, the jury could have nevertheless concluded that he was responsible for the charged offense. Kidnapping is an offense that continues as long as the victim is restrained. *See State v. Jones,* 185 Ariz. 403, 406–07, 916 P.2d 1119, 1122–23 (App.1995). "Restrain" means to "restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty." A.R.S. § 13–1301(2) (2010). Restraint is without consent if it is accomplished by physical force or intimidation. A.R.S. § 13–1301(2)(a). The jury could have reasonably inferred from the circumstantial evidence that defendant, either as a principal or an accomplice, restrained the victim at gunpoint in the backseat of the vehicle while he, Lewis, and Cano attempted to retrieve the Mercedes left in the parking lot as ransom. The evidence was accordingly sufficient to convict defendant of the offenses of kidnapping, theft by extortion, and aggravated assault.

¶ 9 We are not persuaded by defendant's argument that the evidence was insufficient because of the absence of any testimony from the officer who actually found the cell phone used to make ransom calls on defendant. The case agent testified:

> When Mr. Bustamante was taken into custody by the SAU [Special Assignment Unit] squad team detectives, they searched him ... for safety reasons. When they did that, they removed his property and placed it in a property bag, which we—they carry and detectives carry. When I

approached Mr. Bustamante, they provided me with same.

\* \* \*

> So what I did in this case is, I obtained the cell phone that was in Mr. Bustamante's property bag, and I looked at ... to retrieve the cell phone number, which I did.

Records showed that this cell phone was used to make the ransom calls the night the victim was kidnapped. The state also showed the jury a video depicting the case agent walking up to defendant immediately after an officer had searched him and bagged the property taken from defendant's person. On this evidence, the jury could have found the case agent's testimony credible and her description of the source of the impounded property sufficiently persuasive to support a conclusion that the phone used to make the ransom calls was in defendant's possession during the commission of the charged offenses.

**B. Prohibited Possessor**

¶ 10 Finally, we reject defendant's argument that the evidence was insufficient to show that he knowingly possessed the firearm on the driver's side floorboard. A person commits misconduct involving weapons by "knowingly ... possessing a deadly weapon ... if such person is a prohibited possessor." A.R.S. § 13–3102(A)(4) (2010). "Possess" means "knowingly to have physical possession or otherwise to exercise dominion or control over property." A.R.S. § 13–105(33) (2010). The state thus bore the burden of proving that defendant 1) knew that the gun was on the driver's side floorboard and 2) he exercised control over it. *See State v. Cox,* 217 Ariz. 353, 357, ¶ 26, 174 P.3d 265, 269 (2007).

¶ 11 The gun was found in the car.[4] The gun and the car were essential to a two-day criminal enterprise by defendant and his co-conspirators which commenced with kidnapping the victim at gunpoint and transporting him in the car. Within an hour of the kidnapping, the victim started calling his girlfriend—on defendant's cell phone—asking

4. We refer only to the revolver located on the driver's side floorboard, not a toy gun which was found in the well near the passenger's feet.

her to cooperate. Multiple calls were made from defendant's cell phone and the victim indicated the kidnappers were going to kill him if they didn't get the ransom. The following day, when the car was used to transport the battered victim and to collect the ransom, defendant was in the front passenger seat with the gun visible and within reach.[5] Defendant had the present ability to use the gun to subdue the victim or resist defensive measures. It was within his dominion and control while the three kidnappers were attempting to retrieve the Mercedes as ransom.[6] Defendant's dominion and control over the gun did not need to be exclusive to him to support a conviction for prohibited possessor. *See State v. Cox,* 214 Ariz. 518, 521, ¶ 15, 155 P.3d 357, 360 (2007).[7]

¶ 12 *Miramon,* cited by defendant for the holding that a passenger in an automobile cannot be found to have possessed contraband found in an area accessible to others in the car, is distinguishable. *State v. Miramon,* 27 Ariz.App. 451, 555 P.2d 1139 (1976) (mere presence in vicinity of contraband is not enough). In *Miramon* there was no known connection between the vehicle's occupants. Here, the gun was integral to an ongoing armed kidnapping for monetary gain. From these facts, the jury could reasonably conclude that defendant knew of the handgun on the driver's side floorboard, and had control over it.

## C. *Batson* Challenge

¶ 13 Defendant next argues that the trial court erred in denying his *Batson* challenge, because one of the prosecutor's reasons for striking this juror, that she had a language problem, was not supported by the record. Counsel for Cano argued on behalf of all defendants that the prosecutor had violated *Batson* by using a peremptory to strike Juror No. 10, who, like the defendants, was

Hispanic. This juror had identified herself during *voir dire* as a Head Start teacher. Asked to provide any non-discriminatory reasons for striking this juror, the prosecutor explained:

> The race-neutral reason, Judge, would be I believe that she had some language issues.
>
> Additionally, she is a teacher, and I generally don't have teachers on my list when I get down to an exclusion number, and she works with children.

The judge denied the *Batson* challenge, finding that the prosecutor's reasons for striking the juror were race neutral.

¶ 14 The Equal Protection Clause of the Fourteenth Amendment prevents peremptory strikes of prospective jurors based solely upon race. *Batson,* 476 U.S. at 89, 106 S.Ct. 1712.

> A *Batson* challenge proceeds in three steps: (1) the party challenging the strikes must make a prima facie showing of discrimination; (2) the striking party must provide a race-neutral reason for the strike; and (3) if a race-neutral explanation is provided, the trial court must determine whether the challenger has carried its burden of proving purposeful racial discrimination.

*State v. Roque,* 213 Ariz. 193, 203, ¶ 13, 141 P.3d 368, 378 (2006) (citations omitted). During the third step, the trial court evaluates the credibility of the state's proffered explanation, considering factors such as "the prosecutor's demeanor ... how reasonable, or how improbable, the explanations are ... and ... whether the proffered rationale has some basis in accepted trial strategy." *Miller–El v. Cockrell,* 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

¶ 15 We review a trial court's decision regarding the state's motives for a perempto-

5. Exhibit 44, a photograph depicting the gun as it was discovered by police, shows the gun visible on the driver's side floorboard, near the center console of the vehicle.

6. This basis for conviction is distinct from the *Pinkerton* doctrine, which our Supreme Court held was not part of Arizona law. *See State v. Cohen,* 173 Ariz. 497, 498, 844 P.2d 1147, 1148 (1992) (finding Pinkerton doctrine of co-conspir-

ator liability invalid under state law); *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

7. The Court of Appeals in *Cox* noted that the evidence showed that the weapons Gary Cox was convicted of unlawfully possessing belonged to his fiancé, who presented her bills of sale for the guns at trial. *Id.* at 518, 155 P.3d at 357.

ry strike for clear error. *State v. Murray,* 184 Ariz. 9, 24, 906 P.2d 542, 557 (1995). "We give great deference to the trial court's ruling, based, as it is, largely upon an assessment of the prosecutor's credibility." *State v. Canez,* 202 Ariz. 133, 147, ¶ 28, 42 P.3d 564, 578 (2002).

¶ 16 We find no *Batson* error. By asking the prosecutor for a race-neutral explanation for the strike, the judge implicitly found that defendant had met his initial burden to make a prima facie case of intentional discrimination. *See State v. Newell,* 212 Ariz. 389, 401, ¶ 54, 132 P.3d 833, 845 (2006). The prosecutor's subsequent explanation that he had struck this juror because he believed she had "some language issues," and because she was a teacher and worked with children, however, offered plausible, race-neutral reasons for striking this juror. *See State v. Garcia,* 224 Ariz. 1, 10, ¶¶ 24–26, 226 P.3d 370, 379 (2010) (holding race-neutral prosecutor's explanation that he had struck juror with Hispanic surname in part because she had difficulty understanding English); *State v. Lucas,* 199 Ariz. 366, 368, 18 P.3d 160, 162 (App.2001) (finding that exclusion of juror because of his profession was race-neutral); *United States v. Griffin,* 194 F.3d 808, 825–26 (7th Cir.1999) (same).

¶ 17 Defendant argues for the first time on appeal that the record fails to show that this prospective juror had "some language issues," and the judge accordingly erred by failing to make further inquiry. As an initial matter, defendant misplaces his reliance on *State v. Cruz,* 175 Ariz. 395, 857 P.2d 1249 (1993), for the proposition that the prosecutor is required to provide objective evidence of his race-neutral reasons for peremptory strikes. In *Cruz,* the court applied this requirement only to "wholly subjective" impressions of a juror's character based on the juror's demeanor, such as the prosecutor's "feeling" that the prospective juror was weak and could be easily led. *See id.* at 399, 857 P.2d at 1253. This limited requirement for "objective evidence" to support "wholly subjective explanations," in any case, has been called into doubt by subsequent *Batson*

jurisprudence. *See Canez,* 202 Ariz. at 146, ¶¶ 25–26, 42 P.3d at 577; *State v. Lucas,* 199 Ariz. at 368, ¶ 9, 18 P.3d at 162. Moreover, the United States Supreme Court has repeatedly emphasized that it is the *defendant* who bears the ultimate burden of persuasion that the prosecutor's peremptory strike was racially motivated. *See, e.g., Johnson v. California,* 545 U.S. 162, 170–71, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005); *Snyder v. Louisiana,* 552 U.S. 472, 476–77, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008); *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Batson,* 476 U.S. at 93, 106 S.Ct. 1712. In failing to object to the prosecutor's characterization of this prospective juror's language problems at the time, defendant failed to meet his burden to show that this reason was merely a pretext for racial discrimination. *Cf. United States v. Changco,* 1 F.3d 837, 840–41 (9th Cir.1993) (declining to examine defendant's claim that prospective juror had no language difficulty, because defendant had failed to raise the claim below or develop a factual record to support it). Although the transcript does not reveal language problems exhibited by this prospective juror, "[i]t is difficult to ascertain from a transcript the level of a juror's command of spoken English." *United States v. Murillo,* 288 F.3d 1126, 1136 (9th Cir.2002). On this record, we cannot say that the judge abused his discretion in finding the prosecutor's race-neutral explanations for his strike credible, and in ruling that defendant had failed to demonstrate a *Batson* violation.

### CONCLUSION

¶ 18 For the foregoing reasons, we affirm defendant's convictions and sentences.

CONCURRING: DANIEL A. BARKER, Presiding Judge * and ANN A. SCOTT TIMMER, Judge.

---

* Judge Daniel A. Barker was a sitting member of

this court when the matter was assigned to this