NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

WALTER REID BROWN, *Appellant.*

No. 1 CA-CR 13-0608
FILED 06-05-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2012-150393-001
The Honorable Karen L. O'Connor, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maurice Portley joined.

---

**G O U L D**, Judge:

¶1        Walter Reid Brown ("Defendant") appeals from his conviction and sentence for aggravated assault. He argues the court erred in denying his *Batson* challenge to the prosecutor's peremptory strike of a potential juror. We agree; therefore we reverse Defendant's conviction and sentence and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Defendant was charged with aggravated assault, a dangerous offense, for driving his car at a police officer. The facts relevant to this appeal involve the jury selection process.

¶3        To expedite jury selection, the court had only the first 22 venirepersons provide answers to voir dire. The court instructed the remaining potential jury members to write down any question they would answer "yes" to and what that answer would be. If, during the course of voir dire a juror was excused, the court would then call one of the remaining potential jurors to replace the excused venireperson; that individual would then provide his or her answers to any of the applicable questions.

¶4        Juror 24 was called to replace an excused venireperson; when asked, he indicated he did not have any "yes" answers to the questions asked during voir dire. Later, Juror 24 provided his biographical information in response to the prompts on the back of his juror number card as follows:

> PROSPECTIVE JUROR 24: Juror number 24. I'm retired and I am divorced and I haven't served on any jury before this.
>
> THE COURT: Sir, what did you do before you retired? What kind of work?
>
> PROSPECTIVE JUROR 24: I was a medical doctor.

2

THE COURT: I'm sorry?

PROSPECTIVE JUROR 24: I was a medical doctor.

THE COURT: I can't hear you.[1]

PROSPECTIVE JUROR 24: I was a medical doctor, an MD.

THE COURT: Oh, thank you, medical doctor, thank you.

**¶5**      When the prosecutor used a peremptory strike to strike Juror 24, Defendant made a *Batson* challenge claiming that the only reason for the strike was that Juror 24 was of Asian descent, and therefore a member of a minority group. The prosecutor explained the strike was motivated by concern over whether Juror 24 adequately understood the English language and could follow the proceedings. The court denied the *Batson* challenge and allowed the strike. Defendant was ultimately convicted and now timely appeals.

## DISCUSSION

**¶6**      The Equal Protection Clause of the Fourteenth Amendment prevents peremptory strikes of prospective jurors based solely upon race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Purposeful racial discrimination in the jury selection process "violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 86. Additionally, "denying a person participation in jury service on account of his race, . . . unconstitutionally discriminate[s] against the excluded juror" and the community at large. *Id.* at 87; *Powers v. Ohio*, 499 U.S. 400, 406 (1991). The Equal Protection Clause guarantees the defendant the "right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers*, 499 U.S. at 404; *State v. Anaya*, 170 Ariz. 436, 439, 825 P.2d 961, 964 (App. 1991) ("*Batson* has been interpreted as precluding the peremptory challenge of any cognizable group when the challenge is made for a discriminatory purpose.").

---

[1]      The record reflects that shortly before Juror 24 's voir dire, counsel advised the court that there appeared to be a problem with the courtroom microphone(s), and as a result they were having difficulty hearing the jurors' responses.

¶7 Regardless of whether the defendant and the excluded juror are of the same race, "[t]he discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury." *Powers*, 499 U.S. at 411. "This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant." *Id.* "Rather, it is because racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process' . . . and places the fairness of a criminal proceeding in doubt." *Id.* (quoting *Rose v. Mitchell*, 443 U.S. 545, 556 (1979)); *see also State v. Jordan*, 171 Ariz. 62, 66, 828 P.2d 786, 790 (App. 1992) (stating that a person of Asian descent is a member of a cognizable racial group).

¶8 "We review a trial court's decision regarding the State's motives for a peremptory strike for clear error." *State v. Roque*, 213 Ariz. 193, 203, ¶ 12, 141 P.3d 368, 378 (2006). Absent extraordinary circumstances, "[w]e give great deference to the trial court's ruling, based, as it is, largely upon an assessment of the prosecutor's credibility." *State v. Cañez*, 202 Ariz. 133, 147, ¶ 28, 42 P.3d 564, 578 (2002). However, we will not defer to a decision that is "so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process or equal protection." *Hernandez v. New York*, 500 U.S. 352, 368 (1991) (internal citations omitted).

I. *Batson* Error

¶9 Defendant argues the court committed clear error when it denied his *Batson* challenge based on the following record:

> [DEFENDANT]: Judge, the State has struck Juror number 24, Mr. Benjamin Licup, he is the man who is the medical doctor. He indicates on his bio that he is of Asian descent. As I stated earlier, this jury is devoid of any African Americans. It has, by my observations, there are two people of Hispanic descent and one person of Asian descent and that's Mr. Licup. Judge, I do not see any basis for striking Mr. Licup other than the fact that he is a person of a minority group and I am challenging the State's strike on Batson versus Kentucky [sic].

> THE COURT: All right. Counsel.

> [PROSECUTOR]: First of all, Your Honor, the juror in question is not of the same race or ethnic group as the defendant. I would like to note that for the record. And

second of all, my race neutral reason for striking Juror number 24 is due to the fact that I have some serious concerns about his ability to understand English, legal terminology and also keep up with the speed at which trial proceeds based on the -- his ability to articulate the English language at the time that he was asked multiple questions per the jury voir dire.

THE COURT: All right.  Anything further?

[DEFENDANT]: Yes. Your Honor, in response to that, I'm looking at his bio right now, he has been – he's a medical doctor, he has been in Arizona for 35 years. He has been in Maricopa County for 12 years.  And there has been no -- there was no indication, when he was asked if anybody had any problems with English, written or otherwise, he did not respond to that and I don't think that that qualifies as a race neutral reason for striking him.

THE COURT: Counsel.

[PROSECUTOR]: Your Honor, regardless of whether he indicated or not, my ability to strike him for cause as opposed to striking him as a peremptory strike, there's a differentiation in standard and I would rest on the fact that I still do not feel comfortable, based on his ability to articulate the English language, his ability to understand the complex legal terminologies, jury instructions and testimony that may be used, including possibly slang terminology and lingo, cop talk and all the likes during the duration of this trial.

THE COURT: All right.  The court finds that [the prosecutor's] explanation given for the strike is race neutral and the strike will be allowed, all right?

¶10        "A Batson challenge proceeds in three steps: '(1) the party challenging the strikes must make a prima facie showing of discrimination; (2) the striking party must provide a race-neutral reason for the strike; and (3) if a race-neutral explanation is provided, the trial court must determine whether the challenger has carried its burden of proving purposeful racial discrimination.'" *Roque*, 213 Ariz. at 203, ¶ 13, 141 P.3d at 378 (citations omitted).  The third step is fact intensive; the trial court evaluates the credibility of the State's proffered explanation,

considering factors such as "the prosecutor's demeanor . . . how reasonable, or how improbable, the explanations are[,] and . . . whether the proffered rationale has some basis in accepted trial strategy." *Miller–El v. Cockrell*, 537 U.S. 322, 339 (2003); *State v. Newell*, 212 Ariz. 389, 401, ¶ 54, 132 P.3d 833, 845 (2006). "Implausible or fantastic justifications may (and probably will) be found to be pretext[ual]." *Newell*, 212 Ariz. at 401, ¶ 54, 132 P.3d at 845 (quoting *Purkett v. Elem*, 514 U.S 765, 768 (1995)). Moreover, if the prosecutor's race-neutral explanation is unconvincing in light of all of the circumstances, the explanation itself can suffice to show *Batson* error. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

**¶11**		Step one of the *Batson* analysis was satisfied in this case when the court asked the prosecutor for a race-neutral explanation for the strike; by asking this question, "the judge implicitly found that [D]efendant had met his initial burden to make a prima facie case of intentional discrimination." *State v. Bustamante*, 229 Ariz. 256, 261, ¶ 16, 274 P.3d 526, 531 (App. 2012). In addition, the prosecutor's explanation that he was concerned about Juror 24's ability to understand English is a plausible race-neutral reason under step two of the *Batson* analysis. *See id.* (stating that prosecutor's belief juror had some language issues was race-neutral reason for strike).

**¶12**		The core dispute in this case centers on the third step of the *Batson* analysis; whether the prosecutor's explanation for his strike was credible. *Id.* at 260, ¶ 14, 274 P.3d at 530. This third step is fact intensive, and turns on the issue of counsel's credibility, "which the trial court is in a better position to asses than is this [c]ourt." *Newell*, 212 Ariz. at 401, ¶ 54, 132 P.3d at 845. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez*, 500 U.S. at 365. Absent exceptional circumstances, we will defer to the trial court. *Snyder*, 552 U.S. at 477.

**¶13**		The sole explanation the prosecutor offered for striking Juror 24 was his concern over the potential juror's ability to understand English. The prosecutor based this concern on Juror 24's "ability to articulate the English language at the time that he was asked multiple questions per the jury voir dire."

**¶14**		The defendant "bears the ultimate burden of persuasion that the prosecutor's peremptory strike was racially motivated." *Bustamante*, 229 Ariz. at 261, ¶ 17, 274 P.3d at 531; *see also Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("[A] defendant may rely on 'all relevant circumstances' to

raise an inference of purposeful discrimination."). It is the defendant's responsibility to develop a factual record to support his claim. *Id.* Here, in making his *Batson* challenge, Defendant pointed out that the prosecutor had struck all minorities from the prospective jury panel. He also objected to the prosecutor's proffered reason for striking Juror 24 based on his difficulty understanding English. Defendant argued that Juror 24 was a retired medical doctor, had lived in Arizona for 35 years, and he had not demonstrated any difficulty understanding English during voir dire.

¶15 We recognize that "[i]t is difficult to ascertain from a transcript the level of a juror's command of spoken English." *U.S. v. Murillo*, 288 F.3d 1126, 1136 (9th Cir. 2002). However, the record does not support the prosecutor's claim that he struck Juror 24 based on his lack of English proficiency. Juror 24 did not have occasion to speak more than a sentence or two during voir dire. During voir dire, he simply indicated he would not have answered "yes" to any of the court's prior questions. During his voir dire of the jury, after Juror 24 had been seated as a replacement for an excused venireperson, the prosecutor asked the panel if anyone felt they lacked "sufficient knowledge of legal terminology or the English language." Juror 24 did not raise his card. Additionally, when giving his biographical information, the record gives no indication that Juror 24 was unable to understand or express himself in English.

¶16 The prosecutor did not assert that Juror 24 seemed disinterested or otherwise disengaged in the proceedings due to an inability to understand English. *See U.S. v. Changco*, 1 F.3d 837, 840 (9th Cir. 1993) ("So long as the prosecutor (or the defendant, for that matter) can convince the district court that the potential juror who is being struck *in fact* has difficulty with English, the justification is race-neutral."). Indeed, the court did not make any findings regarding whether the prosecutor relied on Juror 24's demeanor in exercising the strike. *See Snyder*, 552 U.S. at 479 (stating that deference is appropriate where a judge makes a finding, but not where "the record does not show that the trial judge actually made a determination . . .").

¶17 Finally, we note that Defendant did not require the assistance of an interpreter; as a result, any concerns the prosecutor had were not based on Juror 24's ability, as a bilingual juror, to accept a court interpreter's official interpretation of the testimony. *See Hernandez*, 500 U.S. at 356-57, 372 (finding no *Batson* error in prosecutor's strike of bilingual jurors who hesitated when asked if they could accept the interpreter's translation of the testimony).

¶18        Thus, upon examining the record, we do not find any support for the prosecutor's conclusion that Juror 24 was unable to understand English. To the contrary, the record shows that Juror 24 was a medical doctor who had lived in Arizona for 35 years, and was able to express himself quite clearly in English during voir dire. The *Batson* error in this case is magnified by the fact that the prosecutor struck all minority venirepersons from the jury. *See State v. Hardy*, 230 Ariz. 281, 286-87, ¶¶ 12, 15, 283 P.3d 12, 16-17 (2012) (indicating that a pattern of racial exclusion can be present where all minority jurors are struck); *State v. Belcher*, 623 N.E.2d 583, 588 (Ohio Ct. App. 1993) (stating that use of peremptory challenges to exclude all minority jurors results in an inference of racial discrimination). Under these circumstances, "[t]he prosecutor's proffer of [his] pretextual explanation naturally gives rise to an inference of discriminatory intent." *Snyder*, 552 U.S. at 485 (stating that if the prosecutor's race-neutral explanation is unconvincing in light of all of the circumstances, the explanation itself can show *Batson* error); *Newell*, 212 Ariz. at 401, ¶ 54, 132 P.3d at 845 ("[I]mplausible or fantastic justification may (and probably will) be found to be pretext[ual].").

II.     *Batson* Remedy

¶19        We conclude the record supports Defendant's *Batson* challenge as to Juror 24, and the trial court committed clear error in denying the challenge. Defendant requests we reverse his conviction and sentence. Our review of the relevant cases indicates that when a court has committed *Batson* error at the third step of the analysis, reversal and remand for new trial is the appropriate remedy. *Batson*, 476 U.S. at 100 ("If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed."); *see e.g.*, *People v. Turner*, 726 P.2d 102, 112 (Cal. 1986) (reversing judgment where trial court failed to challenge "the inadequacy of the prosecutor's reasons"); *People v. Kindelan*, 572 N.E.2d 1138, 1145 (Ill. App. Ct. 1991) (finding the State's explanation for striking juror not credible and reversing and remanding for new trial); *State v. Bryant*, 662 N.E.2d 846, 850-51 (Ohio Ct. App. 1995) (reversing and remanding for new trial when court committed clear error in accepting State's explanation as race-neutral).

¶20        Error at this stage of the analysis is distinct from a court's determination of whether a defendant has made a prima facie showing of discrimination, which can be cured by remand for a reconstruction hearing to complete the *Batson* inquiry. *See Batson*, 476 U.S. at 100

("Because the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action, we remand this case for further proceedings."); *see also J.E.B. v. Alabama*, 511 U.S. 127, 129, 146 (remanding for further proceedings when trial court erred in rejecting defendant's prima facie showing of discrimination).

**CONCLUSION**

**¶21** For the reasons stated above, Defendant's conviction and sentence is reversed, and this matter is remanded to the trial court for a new trial.



Ruth A. Willingham · Clerk of the Court
FILED: gsh