NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EDWARD EUGENE BROWN, JR., *Appellant.*

No. 1 CA-CR 18-0455
FILED 7-18-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-126171-001 DT
The Honorable David V. Seyer, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Jennifer M. Perkins joined.

**W I N T H R O P**, Judge:

¶1          Edward Eugene Brown, Jr. appeals his convictions and sentences for two counts of aggravated driving while under the influence of intoxicating liquor ("DUI"), arguing the trial court erred in denying his motion for judgment of acquittal, *see* Ariz. R. Crim. P. ("Rule") 20(a)(1), because the State presented insufficient evidence to show he knew or should have known his license was suspended at the time of the DUIs.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Brown.  *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

¶3          On June 6, 2015, Buckeye Police Sergeant Larson observed Brown's Nissan Maxima traveling 75 miles per hour in a 65 mile-per-hour zone on Interstate 10 and twice drift across the solid white shoulder line. After conducting a traffic stop, Sergeant Larson asked Brown—the vehicle's only occupant—for his license, registration, and insurance.

¶4          While Brown searched for his paperwork, Sergeant Larson noticed an open sixteen-pack of beer in the back seat, several cans of beer on the vehicle's floor, and a half-empty can of beer in the center console. The officer could also smell the odor of alcoholic beverages emanating from the vehicle.  Brown was unable to find his registration or proof of insurance and told the officer he had left his wallet with his license at home.

¶5          Brown's speech was slurred, and his eyes were bloodshot and watery.  Sergeant Larson asked Brown to step out of his vehicle so the officer could conduct field sobriety tests.  As Brown exited the vehicle, he used his left hand to support himself, then walked to the rear of the vehicle, and leaned against the trunk.  Brown complied with Sergeant Larson's request to step away from the vehicle, but he began swaying from side to side and front to back when he did so.  Brown then exhibited six out of six cues for intoxication during a horizontal gaze nystagmus test and could not perform additional field tests.

¶6          Sergeant Larson arrested Brown for DUI.  In searching Brown incident to that arrest, Sergeant Larson found Brown's driver's license in one of his pockets.  Sergeant Larson ran the license through his patrol car's computer, which showed the license as being valid.  Brown later submitted

to a blood alcohol test, which showed his blood alcohol concentration at the time was .144.

¶7        The State charged Brown by information with driving or actual physical control of a vehicle while his driver's license or privilege to drive was suspended and (1) while under the influence of intoxicating liquor or drugs such that he was impaired to the slightest degree (Count 1), and (2) with an alcohol concentration of 0.08 or more in his body within two hours of the time of driving (Count 2), both class 4 felonies. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 28-1381(A)(1), (2), -1383(A)(1). The State also alleged Brown had two prior felony convictions.

¶8        At trial, Brown did not dispute he had been drinking and driving and was under the influence of alcohol on June 6, 2015, but, pointing to the fact that Sergeant Larson had run his license and concluded it was valid, he disputed he knew or should have known his license was suspended at the time. To prove Brown's license was suspended and that he knew or should have known it was, the State called a records custodian from the Motor Vehicle Division ("MVD") to testify and offered a redacted version of Brown's motor vehicle record, which was admitted into evidence. The records custodian testified the redacted record contained Brown's identifying information as well as his driver's license and identification card history. She further testified that, on June 6, 2015, Brown's license was suspended.

¶9        The records custodian explained that, on December 29, 2013, Brown had been personally served with a document ("Affidavit") notifying him that his license was suspended, effective fifteen days after that service—on January 13, 2014—and "for not less than 90 consecutive days." The Affidavit contains the order of suspension; a section to be completed and signed by the police officer, certifying that the officer served Brown with the order of suspension; and a section signed by Brown, certifying that he received the order of suspension and that the terms of the order and the steps required to reinstate his license were explained to him. The custodian further explained that, once a license is suspended, it remains suspended until the driver goes to an MVD office to reinstate it after the suspension period is over and pays any fees and satisfies any other court-mandated requirements. In fact, the last line of the "Order of Suspension" box on the Affidavit advised Brown that "[t]his suspension will not end until all reinstatement requirements are met." Although Brown became eligible to apply for a restricted license on February 12, 2014, he did not do so, and therefore no restricted license was ever issued to him. Moreover, Brown took no action to satisfy the requirements or reinstate his license until

March 10, 2016, so his license remained suspended on June 6, 2015—the night he was arrested for his DUI. The records custodian also explained that, even though a driver is required to surrender his or her license at the time of suspension, the driver could still possess the suspended physical license in some instances, such as if the driver—Brown, in this instance—had claimed the license was lost.

¶10 The custodian also testified that because Brown was personally served with two copies of the Affidavit notifying him of the suspension, the MVD did not also send him notification by mail. Finally, she testified the MVD records from which she based her testimony—including a certified copy of Brown's driving record—were "the most accurate . . . reflection of the status of the defendant's license" because the MVD is "the sole proprietor or the holder of driving records."

¶11 The State also called Detective Leon, who had personally served Brown with the Affidavit that notified him of his license suspension in December 2013. She identified Brown in court as the person upon whom she served the Affidavit and stated that, at the time of service, she pulled up Brown's MVD photo and verified that was to whom she was speaking because Brown could not provide her with his photo identification. Because Brown claimed he did not have his license, she had marked it as "lost" on the Affidavit. Detective Leon read the order of suspension aloud and verbatim to Brown and had him sign it, indicating he agreed to the suspension and understood what had been read to him, before giving him two copies for his records. She explained that she typically asks drivers whether they understand what she has read to them, and if they have any questions, she answers them before the driver signs the Affidavit. She further confirmed, "[T]here were no issues with the service of this affidavit."

¶12 After the State rested its case-in-chief, Brown moved for a judgment of acquittal. *See* Ariz. R. Crim. P. 20. The trial court denied the motion, finding the State had presented substantial evidence to support a conviction on each count.

¶13 Brown then testified, claiming he did not know his license was suspended until 2016. He further claimed he did not remember signing the December 29, 2013 Affidavit that notified him of his suspension, but he did not dispute he signed it. He also claimed he did not remember receiving two copies of the Affidavit, but he agreed it was possible he did. In response to a jury question, Brown stated, "On June 6th, 2015, I wasn't

served. It was 12-29-13." When cross-examined about that answer, he retracted and said he did not remember being served.

**¶14** The jury convicted Brown as charged on both counts. Brown admitted having two prior felony convictions—including one historical prior felony conviction—and the trial court sentenced him as a Category Two offender to concurrent, partially mitigated terms of 3.5 years' imprisonment, with credit for thirty-five days of presentence incarceration.

**¶15** We have jurisdiction over Brown's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## ANALYSIS

**¶16** Brown argues the trial court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence. As at trial, he does not dispute he had been drinking and driving, or his blood alcohol concentration was more than .08 on June 6, 2015, but claims insufficient evidence supports finding he knew or should have known his license was suspended that evening.

*I.     Standard of Review and Applicable Law*

**¶17** We review *de novo* the sufficiency of the evidence supporting a conviction and the trial court's ruling on a motion for judgment of acquittal. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). A motion for judgment of acquittal should be granted only "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "Substantial evidence is that which reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004) (citing Rule 20).

**¶18** In a Rule 20 motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16 (citations omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012) (quoting *State v. Arredondo*, 155 Ariz. 314, 316 (1987)). "If reasonable persons may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *Davolt*, 207 Ariz. at 212, ¶ 87 (citation omitted).

**¶19**     In reviewing whether sufficient evidence exists, we consider both direct and circumstantial evidence, *West*, 226 Ariz. at 562, ¶ 16, recognizing that a conviction may rest solely on circumstantial evidence, *State v. Nash*, 143 Ariz. 392, 404 (1985); *accord State v. Bible*, 175 Ariz. 549, 560 n.1 (1993); *see also State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) ("Criminal intent, being a state of mind, is shown by circumstantial evidence." (quoting *State v. Routhier*, 137 Ariz. 90, 99 (1983))). The State is not required "to negate every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence." *Nash*, 143 Ariz. at 404 (citation omitted).

**¶20**     When the evidence supporting a verdict is challenged on appeal, we do not reweigh the evidence, *State v. Borquez*, 232 Ariz. 484, 487, ¶ 9 (App. 2013); *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004), or determine the credibility of witnesses, *Williams*, 209 Ariz. at 231, ¶ 6; *see also State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) ("This court is not empowered to impose its own determination as to the credibility of [witnesses] in deciding a Rule 20 motion."). Rather, we view the evidence in the light most favorable to sustaining the verdict, *see State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005), and resolve all conflicts in the evidence against Brown, *see Bustamante*, 229 Ariz. at 258, ¶ 5.

>  II.     *Substantial Evidence Supporting the Convictions*

**¶21**     Under A.R.S. § 28-1381,

>  A. It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances:
>
>  1. While under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree.
>
>  2. If the person has an alcohol concentration of 0.08 or more within two hours of driving or being in actual physical control of the vehicle and the alcohol concentration results from alcohol consumed either before or while driving or being in actual physical control of the vehicle.

**¶22**     Further, under A.R.S. § 28-1383,

A. A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does any of the following:

1. Commits a violation of § 28-1381, § 28-1382 or this section while the person's driver license or privilege to drive is suspended, canceled, revoked or refused or while a restriction is placed on the person's driver license or privilege to drive as a result of violating § 28-1381 or [§] 28-1382 or under § 28-1385.

¶23        To convict a person of aggravated DUI based on a suspended license, the State must establish the defendant knew or should have known that his license and driving privileges were suspended. *State v. Williams*, 144 Ariz. 487, 489 (1985). Personal service of suspension by an officer may constitute substantial evidence of notice. *State v. Ekmanis*, 180 Ariz. 429, 431-32 (App. 1994).

¶24        In this case, substantial evidence supports the jury's finding that Brown knew or should have known his license was suspended on the night of his arrest. Relying on a certified copy of Brown's driving record from the MVD—the sole holder of driving records for the state—the records custodian testified Brown's driver's license was suspended from January 13, 2014, until March 10, 2016—a period that included June 6, 2015. Although Brown correctly argues the discrepancy with Sergeant Larson's search on his patrol car's computer could not be explained with certainty by any of the witnesses, his argument amounts to a request that we reweigh the evidence, something we will not do. *See Borquez*, 232 Ariz. at 487, ¶ 9; *Williams*, 209 Ariz. at 231, ¶ 6. The records custodian confirmed Brown's license could be suspended even though he retained physical possession of it, *see State v. Mitchell*, 136 Ariz. 386, 388 (App. 1982), and the jury could have reasonably inferred the reason he denied to Sergeant Larson that he had his license with him was because he did not want the sergeant to discover his suspension or confiscate the license.

¶25        Further, as the records custodian explained, on December 29, 2013, Brown was personally served with the Affidavit that stated his license would remain suspended until he satisfied all requirements and went to an MVD office to reinstate it. However, he took no such action until March 2016, and although the MVD sometimes mails notices to drivers, it does not do so in cases—such as Brown's—where the driver is personally served and notified with an affidavit they are required to sign.

¶26 Although Brown suggests Detective Leon might have personally served the wrong person, Detective Leon verified she served Brown on the night of service and identified him in court as the person she served. She testified she read the order of suspension to him verbatim and ensured he understood what she had read—including the notice that his license would remain suspended for "not less than 90 consecutive days" and until reinstatement—before having him sign it. She gave Brown two copies of the Affidavit, which contained the information regarding his suspension and reinstatement, and the trial court admitted into evidence the redacted copy of Brown's driving record and the signed Affidavit. Brown did not deny he was served or the Affidavit bore his signature.

¶27 Thus, the State presented evidence that Brown was served a notice of his suspension in December 2013, signed the notice acknowledging such, and, despite the provision stating his license would remain suspended until he took affirmative action to reinstate it, took no action to reinstate it before June 6, 2015. Accordingly, the State presented substantial evidence to establish Brown knew or should have known his license was suspended at the time of his DUIs. Because substantial evidence supports Brown's convictions, the trial court did not err in denying his motion for judgment of acquittal.

## CONCLUSION

¶28 Brown's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA