NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

NGON TRUNG TRUONG, *Appellant*.

No. 1 CA-CR 23-0500
FILED 12-24-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-123627-001
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Karen Moody
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Vice Chief Judge Randall M. Howe joined.

---

**P E R K I N S**, Judge:

**¶1**   Ngon Trung Truong appeals his conviction and sentence for second-degree murder. Truong argues the superior court erred by admitting certain evidence at trial and that the State failed to rebut his justification defense beyond a reasonable doubt. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**   We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

**¶3**   In June 2021, Truong lived with his ex-wife, Diane, and their daughter, Kenzie. For privacy purposes, we refer to these witnesses by pseudonyms. Diane had been dating the victim, D.J., for a year. Diane and D.J. met at Walmart, where Diane worked in the store's nail salon and D.J. worked as an armed security guard.

**¶4**   One evening, D.J. dropped Kenzie off at Diane's home. Diane went outside to speak to D.J. As D.J. was leaving, he used the Vietnamese word "matday." Diane explained at trial this was a "joking term" meaning "bye, bitch" or "bye, jerk." Diane responded to D.J. and said "Okay, bye, matday," and he laughed. Truong came outside, overheard D.J. and Diane's conversation, and thought D.J. was swearing at him. Truong began swearing and yelling at Diane. D.J. then got out of his car, walked toward Truong and Diane, and told Truong that Diane had done nothing wrong. D.J. told Truong to "pick on [D.J.]" if he wanted "to pick on someone."

**¶5**   Truong shot D.J. once with a handgun, killing him.

**¶6**   Police interviewed Truong shortly after the shooting. Truong claimed D.J. followed him to his truck and pulled at him after their verbal altercation. Truong was angry and thought D.J. wanted to fight him, so Truong drew the gun he carried on his hip. Truong then told the detective

that D.J. grabbed his arm or hand to push the gun away when it discharged. Truong admitted D.J. was unarmed and that D.J. was not hurting him when he drew his gun.

¶7        Truong told a different story at trial, arguing he acted in self-defense. Truong testified he was standing near the side door of his truck when D.J. approached him, tapped on his shoulder from behind, and attempted to pull Truong back. Truong testified that when he lifted his arm to point at Diane, D.J. saw the gun Truong carried on his hip. He claimed D.J. tried to grab the gun, but that Truong was faster and grabbed it first. Truong described a struggle over the gun and said, "the gun accidentally . . . shot [D.J.]."

¶8        Diane testified at trial that she and D.J. were arm in arm walking away from Truong when Truong shot D.J. from behind. She claimed Truong fired from five to ten feet away.

¶9        The physical evidence showed the bullet entered through the front, left side of D.J.'s body and that Truong fired the gun from less than one foot away.

¶10        Over Truong's objection, the State entered into evidence a concealed weapons permit police recovered from D.J.'s wallet after the shooting. The State briefly questioned a detective about the permit, who testified "there are required classes that have to be taken in order to get the . . . permit." The State referenced the permit in its closing argument to support its theory that D.J. did not try to grab Truong's gun because he was trained with guns and "knew when he could use physical force [and] . . . to not use deadly force."

¶11        The State also introduced testimony from Truong's daughter, Kenzie. About one month before the shooting, Kenzie walked into the house and saw Truong cleaning his guns. Truong saw that D.J. had dropped Kenzie off and said he was going to kill D.J. She testified that D.J. and Truong did not like each other, and that Truong was unhappy about Kenzie's friendly relationship with D.J.

¶12        A jury found Truong guilty of second-degree murder with two aggravating circumstances. The superior court sentenced Truong to 17.5 years imprisonment.

¶13        Truong timely appealed, and we have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 13-4031, -4033(A)(1).

**DISCUSSION**

**¶14**       Truong raises three issues on appeal, contending that (1) the court erred by admitting D.J.'s concealed weapons permit into evidence, (2) the court erred by allowing Kenzie to testify about Truong's threat against D.J., and (3) the State failed to prove beyond a reasonable doubt that Truong did not act in self-defense.

## I.       D.J.'s Concealed Weapons Permit

**¶15**       Truong argues the superior court erred by admitting D.J.'s concealed weapons permit into evidence and allowing the State to argue inferences from the permit during its closing argument. We review evidentiary rulings for an abuse of discretion. *State v. Sanders*, 245 Ariz. 113, 128, ¶ 58 (2018).

**¶16**       Truong contends the permit is irrelevant because whether D.J. was trained to handle firearms "is of no consequence" in determining whether Truong shot D.J. in self-defense. He also claims the permit confused issues, misled the jury, and delayed the trial.

**¶17**       Evidence is relevant if "it has any tendency to make a fact [of consequence in the action] more or less probable than it would be without the evidence." Ariz. R. Evid. 401. Evidence may be relevant even if it is insufficient to "support a finding of an ultimate fact." *State v. Togar*, 248 Ariz. 567, 572, ¶ 13 (App. 2020). "This standard of relevance is not particularly high." *Id.*

**¶18**       Here, the disputed fact of consequence was whether D.J. reached for Truong's gun. This fact was critical because Truong's self-defense claim hinged on the jury finding that (a) D.J. attempted to grab Truong's gun, and (b) Truong believed D.J. intended to use deadly force against him, thus justifying his conduct. The mere fact that D.J. had a concealed weapons permit is insufficient to prove the State's assertion that D.J. did not reach for Truong's gun. But that D.J. was trained in the proper use of firearms, had taken classes to obtain the permit, and had some experience around firearms makes it more probable, however slightly, that he knew how to handle the gun safely. *Id.* (evidence is relevant if it "would render the desired inference more probable"). The superior court did not abuse its discretion in concluding that the concealed weapons permit satisfied the low bar for relevance. *State v. Williams*, 133 Ariz. 220, 230 (1982) ("The weighing and balancing under Rule 403 is within the discretion of the trial court and will not be disturbed on appeal unless it has been clearly abused.").

**¶19** And Truong's arguments that the permit caused confusion and delay does not persuade us otherwise. The State asked a detective six questions related to the permit during a ten-day jury trial. The detective testified the permit belonged to D.J. and that a person must complete required classes before obtaining one. And the State referenced the permit once in its closing argument. These brief references do not amount to delay and Truong identifies no evidence of confusion beyond his mere speculation.

## II.   Kenzie's Testimony

**¶20** Truong next argues the superior court erred by allowing Kenzie to testify about Truong's threat to kill D.J.

**¶21** Arizona Rule of Evidence 404(b)(1) precludes evidence of "other crimes, wrongs or acts" to prove the character of a defendant "to show action in conformity therewith." But such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b)(2). "We review the admission of prior act evidence under Rule 404(b) for an abuse of discretion." *State v. Scott*, 243 Ariz. 183, 187, ¶ 14 (App. 2017).

**¶22** A person commits second-degree murder if he intentionally, knowingly, or recklessly kills another person without premeditation. A.R.S. § 13-1104(A). The superior court admitted Kenzie's testimony under Rule 404(b)(2) as evidence of Truong's intent to commit second-degree murder. Truong contends Kenzie's testimony was evidence of premeditation. He argues that because premeditation is not an element of second-degree murder, Kenzie's testimony was inadmissible to prove his intent for the charged offense.

**¶23** But Truong concedes that "premeditation can show intent." Our review is limited to whether the superior court's decision to admit Kenzie's testimony was "legally incorrect." *State v. Fish*, 222 Ariz. 109, 114, ¶ 8 (App. 2009). Kenzie's testimony was evidence of Truong's intent to shoot D.J., which Rule 404(b)(2) expressly permits. Truong also argues that a statement he made a month before the shooting is irrelevant to his intent on the night he shot D.J. But that argument goes to the weight of the evidence, not its admissibility, and "[i]t is a basic maxim that . . . juries decide what weight to give [the evidence]." *State v. Lehr*, 201 Ariz. 509, 517, ¶ 24 (2002). We will not reweigh evidence when a jury has already done so. *State v. Clark*, 249 Ariz. 528, 536, ¶ 26 (App. 2020).

¶24        The superior court did not abuse its discretion by allowing Kenzie to testify about Truong's prior threat to kill D.J.

## III.        Sufficiency of the Evidence

¶25        Truong last contends the State presented insufficient evidence to prove he did not act in self-defense.

¶26        We review sufficiency of the evidence claims *de novo*, *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014), and will only reverse if the verdict is not supported by substantial evidence, *State v. Tucker*, 231 Ariz. 125, 138, ¶ 27 (App. 2012). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290 (1996). We resolve any conflicts in the evidence against Truong. *State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012). And issues of witness credibility and the weight assigned to their testimony are reserved for the jury, not this Court. *Id.*

¶27        Truong asserts Diane's testimony—that Truong shot D.J. in the back from several feet away—conflicted with the physical evidence. He contends the State presented no evidence beyond Diane's "impossible story" to prove Truong's actions were unjustified, and thus failed to satisfy its evidentiary burden. We disagree.

¶28        Even rejecting Diane's version of events, the jury could have found beyond a reasonable doubt that Truong committed second-degree murder without justification. Truong's statements during the post-shooting interview contradicted his trial testimony. Truong admitted he drew his gun in anger. He told the police that D.J. was unarmed and was not hurting Truong when he drew his gun. Truong admitted he did not like D.J. and Kenzie testified that mere weeks before the shooting, Truong said he was going to kill D.J.

¶29        There was sufficient evidence for the jury to conclude Truong did not act in self-defense.

## CONCLUSION

¶30        We affirm Truong's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:       JR