297 P.3d 927

**STATE of Arizona, Appellee,**

v.

**Derek Paul GONSALVES, Appellant.**

**No. 1 CA–CR 11–0645.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 28, 2013.

**522**

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Division and Jeffrey L. Sparks, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Thomas K. Baird, Deputy Public Defender, Phoenix, Attorneys for Appellant.

GOULD, Judge.

¶ 1 In this opinion, we address whether a defendant may be found in constructive possession of a firearm, and therefore guilty of misconduct involving weapons pursuant to Arizona Revised Statutes ("A.R.S.") Section 13–3102(A)(4),[1] when an accomplice maintains exclusive possession of the firearm during the commission of an offense. We conclude a defendant may be found in constructive possession of a firearm under such circumstances if there is sufficient evidence to show: (1) the defendant has actual knowledge of the firearm, and (2) the possession, use, or threatened use of the firearm is essential to the commission of the offense.

### Procedural and Factual Background

¶ 2 Defendant Derek Paul Gonsalves appeals his conviction and sentence for misconduct involving weapons under A.R.S. § 13–3102(A)(4), on the ground the evidence was insufficient to support the conviction.[2]

¶ 3 We review *de novo* the sufficiency of the evidence to support a conviction. *State*

*v. West,* 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). We view the facts in the light most favorable to upholding the jury's verdict, and resolve all conflicts in the evidence against defendant. *State v. Girdler,* 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983). We do not distinguish between direct and circumstantial evidence. *See State v. Stuard,* 176 Ariz. 589, 603, 863 P.2d 881, 895 (1993). Finally, we review questions of law *de novo. In re Brittany Y.,* 214 Ariz. 31, 32, ¶ 6, 147 P.3d 1047, 1048 (App.2006).

¶ 4 At approximately 1:00 a.m., the victim entered a convenience store in west Phoenix and attempted to make a purchase with a one-hundred-dollar bill. The clerk told him that he could not accept a one-hundred-dollar bill as payment for a purchase. The victim left the store and approached two men by the gas pumps, one of whom he later identified as Gonsalves, showed them the hundred-dollar bill, and asked them if they had change. Gonsalves indicated he did not have any change, and the victim left the parking lot and started to walk home.

¶ 5 An officer testified that a surveillance tape from the store showed Gonsalves and his accomplice watching the victim leave the parking lot. The tape then showed the two men "rather hastily" jump into a blue SUV, and, with Gonsalves as the driver, make a "sharp U-turn" in the parking lot to follow the victim.

¶ 6 Less than five minutes later, the blue SUV stopped next to the victim, and Gonsalves and his accomplice got out and approached the victim. Gonsalves was not armed; however, his accomplice held a handgun. While his accomplice held the victim at gunpoint, Gonsalves yelled at the victim several times to give him his money. The victim, who is hearing impaired, pointed to his ears in an attempt to convey he had difficulty hearing, and told Gonsalves he did not have any money. While his accomplice continued to hold the victim at gunpoint, Gonsalves punched the victim in the face and stole six hundred dollars from him. After Gonsalves

---

**1.** We cite to the current versions of the statutes, which have not changed materially with respect to the issues on appeal since this offense was committed on July 30, 2010.

**2.** Defendant appealed his convictions on all three counts. However, on appeal Defendant only challenges his conviction for misconduct involving weapons.

robbed the victim, his accomplice shot the victim in the leg. The two men then left the scene together in the blue SUV.

¶ 7 The victim subsequently identified Gonsalves in a photo lineup as the person who had robbed him.[3] At trial, the parties stipulated that Gonsalves had a prior felony conviction and did not have the right to own, carry, or possess a firearm. The jury convicted Gonsalves of armed robbery, aggravated assault, and misconduct involving weapons based on his status as a prohibited possessor. Gonsalves timely appealed.

## Discussion

¶ 8 The sole issue on appeal is whether there is sufficient evidence to show Gonsalves knowingly possessed the gun used by his accomplice. Gonsalves contends that because his accomplice held the gun throughout the robbery, the State failed to show he was in possession of the gun, and therefore failed to prove an essential element of the offense of misconduct involving weapons.[4] In response, the State argues that while Gonsalves did not physically possess the gun, he jointly and constructively possessed the gun with his accomplice during the robbery.

¶ 9 Possession may be actual or constructive. *State v. Barreras*, 112 Ariz. 421, 423, 542 P.2d 1120, 1122 (1975); A.R.S. § 13–105(34) (" 'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property."). Actual possession means a defendant knowingly exercised direct physical control over an object. *Barreras*, 112 Ariz. at 422, 542 P.2d at 1121; A.R.S. § 13–105(34). However, "[o]ne who exercises dominion or control over property has constructive possession of it even if it is not in his physical possession." *State v. Chabolla–Hinojosa*, 192 Ariz. 360, 363, ¶ 13, 965 P.2d 94, 97 (App.1998). Thus, under a theory of constructive possession, two or more persons may jointly possess a prohibited object; possession need not be "[e]xclusive, immediate and personal." *State v. Carroll*, 111 Ariz. 216, 218, 526 P.2d 1238, 1240 (1974).

¶ 10 Constructive possession may be proven by direct or circumstantial evidence. *See State v. Villalobos Alvarez*, 155 Ariz. 244, 245, 745 P.2d 991, 992 (App.1987). However, a person's mere presence at a location where a prohibited item is located is insufficient to show that he or she knowingly exercised dominion or control over it. *State v. Miramon*, 27 Ariz.App. 451, 452, 555 P.2d 1139, 1140 (1976) (citation omitted). Rather, the state must show by "specific facts or circumstances that the defendant exercised dominion or control" over the object. *Villalobos Alvarez*, 155 Ariz. at 245, 745 P.2d at 992.

¶ 11 Thus, Gonsalves' mere proximity to the gun during the robbery was insufficient to show constructive possession. In order to show Gonsalves constructively possessed the gun, the State was required to prove (1) Gonsalves knew his accomplice possessed the gun, and (2) Gonsalves jointly exercised control over the gun. *See State v. Bustamante*, 229 Ariz. 256, 259, ¶ 10, 274 P.3d 526, 529 (App.2012) (holding that where defendant was charged with misconduct involving weapons, in order to prove constructive possession over a gun on the driver's side floorboard of a car, the State "bore the burden of proving that defendant 1) knew that the gun was on the driver's side floorboard and 2) he exercised control over it."); *State v. Cox*, 217 Ariz. 353, 357, ¶ 26, 174 P.3d 265, 269 (2007) (holding there was sufficient evidence to support conviction for misconduct involving weapons where the State showed the defendant "(1) knew that the guns were in the trunk and (2) [defendant] exercised control over them.").

¶ 12 Based on our review of the record, there was sufficient evidence for the jury to find Gonsalves knew his accomplice possessed the gun during the robbery. Gonsalves and his accomplice drove to the scene of the robbery together. While the two men approached the victim, the accomplice was holding a gun, and when Gonsalves robbed

---

3. The victim initially identified Gonsalves as the shooter. At trial, however, the victim denied telling police Gonsalves was the one who shot him; he testified that "the other person had the gun."

4. A person commits misconduct involving weapons by "knowingly ... [p]ossessing a deadly weapon ... if such person is a prohibited possessor." A.R.S. § 13–3102(A)(4).

the victim, his accomplice held the victim at gunpoint. Gonsalves was also present when his accomplice shot the victim in the leg.

¶ 13 Gonsalves argues, however, that even assuming he knew about the gun, the evidence still did not show he jointly exercised control over the gun. To resolve this issue, we must examine whether the gun was essential to committing the robbery. *See Bustamante*, 229 Ariz. at 259–60, ¶¶ 11–12, 274 P.3d at 529–30; *United States v. Perez*, 661 F.3d 568, 577–78 (11th Cir.2011).

¶ 14 In *Bustamante*, two men kidnapped the victim at gunpoint and placed him in a vehicle. *Bustamante*, 229 Ariz. at 257, 259–60, ¶¶ 2–3, 11, 274 P.3d at 527, 529–30. A short time later, the victim called his girlfriend from a cell phone, advising her the kidnappers would kill him if they did not receive a ransom. Police later identified the cell phone as belonging to the defendant. *Id.* The next day, when the defendant and the victim arrived at the ransom drop-off point, the police intervened and arrested the defendant and his coconspirators. *Id.* The victim was found in the back seat of the car, beaten and bruised, while the defendant was in the front passenger seat. *Id.* On the driver's side floorboard of the car, police located a loaded handgun that was visible and within reach of the defendant. *Id.* The defendant was eventually convicted of kidnapping, aggravated assault, theft by extortion, and misconduct involving weapons. *Id.*

¶ 15 On appeal, the defendant challenged the sufficiency of the evidence with regard to his weapons conviction, arguing the State had failed to show he knowingly possessed the handgun. *Bustamante*, 229 Ariz. at 259–60, ¶¶ 10–12, 274 P.3d at 529–30. We rejected the defendant's argument, concluding the gun was "essential" to the efforts of the defendant and his coconspirators to kidnap and extort money from the victim. *Id.* at 259, ¶¶ 11–12, 274 P.3d at 530. In reaching this conclusion, we noted the gun was "visible and within reach" of the defendant, and the "[d]efendant had the present ability to use the gun to subdue the victim or resist defensive measures." *Id.* at 260, ¶ 11, 274 P.3d at

530. Based on these facts, we held that the jury could have reasonably concluded the defendant had control over the handgun. *Id.* at 260, ¶ 12, 274 P.3d at 530; *see also State v. Coley*, 158 Ariz. 471, 472, 763 P.2d 535, 536 (App.1988) (affirming conviction for misconduct involving weapons, despite the fact defendant never touched the weapon, where defendant and his accomplice were engaged in a scheme to buy and transport weapons and it was "obvious" defendant knew the weapon was being transported in the van).

¶ 16 In *Perez*, the defendant and his co-defendants were convicted of conspiracy and attempted robbery of a fictional drug stash house. *Perez*, 661 F.3d 568, 577–78. The defendant was also convicted for being a felon in possession of a firearm.[5] At the time of the defendant's arrest, he was not in physical possession of any firearm; all of the subject firearms were located in a separate vehicle. *Perez*, 661 F.3d at 577–78. On appeal, defendant argued there was insufficient evidence to prove he knew about the guns in the other vehicle or that he exercised any "dominion or control over them." *Id.* at 577.

¶ 17 The *Perez* court affirmed the weapons conviction based on defendant's joint possession of the firearms with his co-conspirators. The court determined that a jury could have reasonably concluded defendant was aware of the presence of firearms in the other vehicle based on the "near certainty" firearms would be needed to rob the armed guards located at the stash house. *Id.* at 577–78. Moreover, the court noted that while defendant and his co-conspirators were staging the robbery in a "small apartment," the specific guns to be used in the robbery were being discussed by the defendant's co-conspirators and were conspicuously displayed in the presence of the defendant. *Id.* at 578.

¶ 18 In addition, the court concluded that the defendant jointly possessed the firearms with his co-conspirators. *Id.* at 576–77. The court stated that the firearms were essential to committing the robbery, and that even though the defendant may have never intend-

---

5. 18 United States Code ("U.S.C.") Section 922(g) (2012) provides, in pertinent part, "It shall be unlawful for any person ... who has been convicted in any court of a crime punisha-ble by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition."

ed to use the firearms himself, he shared his co-conspirators' intent to use the firearms to rob the stash house. *Id.* at 577; *see United States v. McCraney*, 612 F.3d 1057, 1065–66 (8th Cir.2010) (affirming conviction for possession of a firearm under 18 U.S.C. § 924(c) where, although accomplice maintained exclusive possession of firearm during the armed robbery, circumstantial evidence showed the defendant jointly possessed the firearm because he acted "in concert" with his accomplice during the commission of the armed robbery); *Kemp v. State*, 254 So.2d 228, 228 (Fla.App.1971) (court affirmed conviction for possession of a prohibited weapon, even though accomplice maintained exclusive possession of the weapon during the robbery, because "[i]n circumstances such as these where one of two or more persons possesses a weapon unlawfully for the purpose of committing an offense to which all are a party, the weapon is possessed jointly by the participants.").

¶ 19 Here, there was sufficient evidence to prove Gonsalves jointly possessed the gun with his accomplice because the gun was essential to the robbery. The record shows the gun was an integral part of the plan to rob the victim; the entire robbery was committed while the victim was held at gunpoint. Thus, a jury could have reasonably concluded that Gonsalves either directed his accomplice to hold the victim at gunpoint while he robbed him, or Gonsalves simply knew the gun would be used to immobilize the victim while he searched through his pockets looking for money.

### Conclusion

¶ 20 For the foregoing reasons, we find sufficient evidence supported Gonsalves' conviction for misconduct involving weapons, and accordingly affirm Gonsalves' conviction and sentence.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and DONN KESSLER, Judge.