NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EDWARD SHAWN MULLINS, *Appellant*.

No. 1 CA-CR 15-0139
FILED 7-14-2016

Appeal from the Superior Court in Mohave County
No. S8015CR201201202
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Donn Kessler joined.

---

**J O H N S E N, Judge:**

¶1 Edward Shawn Mullins appeals his convictions and sentences for three counts of sale of dangerous drugs (methamphetamine) and one count of possession of dangerous drugs for sale (methamphetamine). For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2 An informant participated with law enforcement in three controlled purchases of methamphetamine from Mullins. Before each purchase, detectives, aware they were investigating someone named "Shawn" at a particular home address, searched the informant to ensure he was carrying no money or contraband before they outfitted him with an audio transmitting and recording device and gave him $40 to purchase the drugs. While under visual and audio police surveillance, the informant then walked to the home Mullins shared with his girlfriend, and while doing so, he stated his name and the date and then said he intended to buy methamphetamine from Mullins at Mullins's home address. These statements ("Prefatory Statements") were recorded on the device provided by law enforcement.

¶3 On each occasion, the informant bought $40 worth of methamphetamine, and on each occasion, police monitored and recorded the informant's conversations inside Mullins's home ("Purchase Conversations"). On each occasion, immediately after the informant left Mullins's home, he met with detectives, who checked to make sure he no longer had the money they had given him and collected the drugs he had bought. After the third purchase, officers searched Mullins's home pursuant to a warrant, detained him and his girlfriend, and discovered

---

[1] We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404, n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

various items indicating methamphetamine was used and sold there, including ten grams of methamphetamine hidden in a "toolroom."

**¶4**        The State charged Mullins with three counts of sale of dangerous drugs (methamphetamine) and one count of possession of dangerous drugs for sale (methamphetamine), all Class 2 felonies. Although the informant agreed to testify at trial, he absconded, and the State, without objection, introduced in evidence three compact discs, each containing one of the three recorded Prefatory Comments and the related Purchase Conversation.

**¶5**        The jury found Mullins guilty as charged.  The court imposed aggravated concurrent prison terms of 10.5 years.  Mullins timely appealed; we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) (2016), 13-4031 (2016), and -4033(A)(1) (2016).[2]

## DISCUSSION

### A.    Hearsay and Confrontation Rights.

**¶6**        Mullins first contends the superior court fundamentally erred by allowing the jury to hear references by the informant to Mullins in the recorded Prefatory Statements and references to "Shawn" in the first and third recorded Purchase Conversations.  Mullins argues this identification evidence was inadmissible hearsay and violated his right to confront the informant.  Because he failed to object to the evidence, Mullins has the burden to show that error occurred, the error was fundamental and that he was prejudiced thereby. *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 20-22 (2005).

**¶7**        "'Hearsay' [is] a statement[] . . . offer[ed] in evidence to prove the truth of the matter asserted[,]" and generally is not admissible as evidence.  Ariz. R. Evid. 801(c), 802.  A "statement" for this purpose is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Ariz. R. Evid. 801(a).  Thus, "words or conduct not intended as assertions are not hearsay even when offered as evidence of the declarant's implicit belief of a fact." *State v. Chavez*, 225 Ariz. 442, 444, ¶ 8 (App. 2010); *see also* Fed. R. Evid. 801 advisory committee note to subdivision (a) ("The effect of the definition of 'statement' is to exclude from operation of the hearsay rule all evidence of conduct, verbal or

---

[2]        Absent material change from the relevant date, we cite a statute's current version.

nonverbal, not intended as an assertion.  The key to the definition is that nothing is an assertion unless intended to be one.").

¶8        The Confrontation Clause of the Sixth Amendment protects a defendant's opportunity to prove a witness's motive or bias.  U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974).  "[T]he Confrontation Clause prohibits the admission of testimonial evidence from a declarant who does not appear at trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. King*, 213 Ariz. 632, 637, ¶ 17 (App. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).  "The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford,* 541 U.S. at 59, n.9.  Thus, the Confrontation Clause does not apply to non-hearsay statements.  *State v. Tucker*, 215 Ariz. 298, 315, ¶ 61 (2007).

¶9        We need not determine whether the mentions of "Shawn" in the Prefatory Statements constitute inadmissible hearsay because nothing in the record indicates the jury heard the Prefatory Statements.  Although the Prefatory Statements were not redacted from the compact discs that were admitted in evidence, the portions of the recordings that contained the Prefatory Statements were not played during the trial.  Instead, the prosecutor specified the time frames of the recordings to be played in court, and those time frames reflected only what transpired while the informant was in Mullins's home.

¶10       Mullins argues the superior court was obligated *sua sponte* to instruct the jury pursuant to Arizona Rule of Evidence 105 on the "proper scope" of the complete recordings.  *See* Ariz. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose - but not against another party or for another purpose - the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").  But we cannot fault the superior court for failing *sua sponte* to inquire into the admissibility of evidence that it was not aware existed.  To be sure, the jury had access during deliberations to the complete recordings, including the Prefatory Statements.  However, nothing in the record establishes that the jurors actually listened to the recordings as they deliberated, let alone that they listened to the Prefatory Statements.[3]

---

3        We note that the superior court twice instructed the jury to consider only the evidence that was "produced in court."

¶11             As for the references to "Shawn" during the Purchase Conversations, they are not hearsay. In the recording documenting the first controlled purchase, the informant says "Shawn" three times while other voices are heard in the background engaged in nondescript discussions. The informant is, therefore, not "asserting a matter" the veracity of which could be challenged through cross-examination. In the third recording, the informant appears to knock on a door and said, "Hey Shawn! I have some money for you brother!" This statement was not offered to prove the truth of the matter asserted; instead, it is circumstantial evidence that Mullins had drugs for sale. *See Chavez*, 225 Ariz. at 444, ¶ 9 (agreeing with other courts that have held out-of-court statements requesting to buy drugs from a defendant are not hearsay).

¶12             Finally, evidence other than the Prefatory Statements and the "Shawn" statements overwhelmingly supports the guilty verdicts. For example, on three occasions, officers observed the informant enter Mullins's home carrying $40 and no contraband, and return with bags of methamphetamine and no money. One detective testified that the male voice he heard during the transmissions of the Purchase Conversations was consistent with Mullins's voice, which he personally heard while executing the search warrant. In two of the recorded Purchase Conversations, Mullins made statements to the informant regarding drug quality, quantities and prices. And when officers searched Mullins's home, in addition to the bag containing ten grams of methamphetamine, they discovered a drug ledger, Mullins's cell phone containing text requests to purchase drugs from him, and small clear plastic bags containing a powder residue.[4] *See State v. Gonsalves*, 231 Ariz. 521, 523, ¶ 9 (App. 2013) ("Possession may be actual or constructive."); *State v. Cox*, 214 Ariz. 518, 520, ¶ 10 (App. 2007) (constructive possession may be proven by circumstantial evidence alone); *State v. Curtis*, 114 Ariz. 527, 528 (App. 1977) ("[I]t is not necessary to show that a defendant exercised exclusive possession or control over the substance itself or the place in which the illegal substance was found; control or right to control is sufficient.")

¶13             In sum, absent admission of hearsay, Mullins's confrontation rights were not violated. Moreover, evidence other than the challenged statements overwhelmingly supports the guilty verdicts. *See State v. Diaz*, 223 Ariz. 358, 361, ¶ 13 (2010) ("We will not reverse a conviction based on speculation or unsupported inference."); *State v. Trostle*, 191 Ariz. 4, 13-14 (1997) (reviewing court will not presume prejudice where none appears

_____

[4]        A detective testified that ten grams of methamphetamine is an amount "consistent with sales" rather than for personal use.

affirmatively in the record).  Thus, even if we were to conclude that the superior court erred in failing *sua sponte* to order the Prefatory Statements and the "Shawn" statements redacted, we would not find fundamental error resulting in prejudice.  *See Harrington v. California*, 395 U.S. 250, 256 (1969) ("constitutional error in the trial of a criminal offense may be held harmless if there is 'overwhelming' untainted evidence to support the conviction."); *State v. Calhoun*, 115 Ariz. 115, 118 (1977) (evidentiary error deemed harmless in light of other overwhelming evidence of guilt).

## B.     Impeachment Evidence.

**¶14**          Mullins argues the court erred in refusing his request to admit evidence that the informant incorrectly described Mullins to law enforcement.  He contends this evidence should have been admitted pursuant to Arizona Rule of Evidence 806 to impeach the informant's recorded references to him.  We review a superior court's evidentiary rulings for abuse of discretion.  *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60 (2004).

**¶15**          Rule 806 provides, in relevant part: "When a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness."  Ariz. R. Evid. 806.

**¶16**          The superior court did not abuse its discretion.  As noted, the Prefatory Statements were not played at trial, and nothing in the record indicates the jury otherwise heard them.  Also, as we have concluded, the "Shawn" references in the Purchase Conversations are not hearsay.  Under these circumstances, Rule 806 did not mandate admission of the impeachment evidence.

## C.     Vouching.

**¶17**          Mullins argues the State engaged in improper vouching by presenting testimony of the officers with whom the informant worked regarding the informant's reliability and credibility.  Specifically, Mullins challenges testimony regarding the informant's reliable participation in previous controlled drug buys from other suspects, arguing such testimony was "another way of saying that the [informant's] actions always resulted in successful 'buys' that led to convictions."[5]  As Mullins concedes, we

---

[5]       Mullins also mentions comments made by the prosecutor during closing arguments.  However, because Mullins does not argue the

review for fundamental error because he did not object to the testimony at trial.

¶18     The record does not support Mullins's argument. None of the challenged testimony states that the informant's work on other investigations led to convictions. *Cf. Fairrow v. Com.*, 175 S.W.3d 601, 606 (Ky. 2005) (admission of testimony that confidential informant's successful "buys" always led to convictions "[o]bviously . . . constituted error"). Moreover, the officers' testimony was relevant to rebut Mullins's opening statements challenging the informant's trustworthiness. On this record, the superior court committed no error, let alone fundamental error that resulted in prejudice.

## D.     Testimony Regarding "Snitches."

¶19     A detective testified that he helped "get [the informant] out of the local community" for safety reasons. Over Mullins's objection, the detective observed that "snitches" can suffer physical violence as retaliation for "suppl[y]ing information to the police[.]"

¶20     Mullins contends that this and other similar testimony by law enforcement witnesses was irrelevant and inadmissible. During opening statements, defense counsel noted that the informant was not present to testify, and remarked that therefore, "[y]ou will not hear anyone during this trial testify that they saw my client or, for that matter, anyone else deliver methamphetamine or, for that matter, anything else to [the informant]." The "snitches" testimony was thus relevant to explain the informant's absence. Accordingly, the superior court did not abuse its discretion by allowing the testimony.

---

prosecutor engaged in vouching, we do not address the propriety of her comments. *See State v. Lindner*, 227 Ariz. 69, 70, n.1, ¶ 3 (App. 2010) (appellate court will not address undeveloped arguments).

## CONCLUSION

¶21        Mullins's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA