NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM KEVIN CAWTHON, *Appellant.*

No. 1 CA-CR 21-0460
FILED 8-18-2022

Appeal from the Superior Court in Maricopa County
No. CR2018-148733-001
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Doran Justice PLLC, Phoenix
By Tyler Howell Schwenke
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

---

**H O W E**, Judge:

¶1        William Kevin Cawthon appeals his conviction and sentence for misconduct involving weapons. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the verdict. *See State v. Gunches*, 225 Ariz. 22, 23 n.1 (2010). In October 2018, Phoenix Police Detective Warner joined a criminal task force to execute a search warrant at a home. Cawthon lived at but did not own the home and was the "primary target" of the search. Warner along with Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Livingston arrived at the home 30 minutes before SWAT breached it.

¶3        Warner and Livingston saw Cawthon leave the garage with another man, and Warner warned the SWAT team that two men were in the home's driveway near a blue-tarped car. The SWAT team approached the men and ordered them to get on the ground. While the other man immediately complied, Cawthon "ducked" and threw an object toward the blue-tarped car before complying. The SWAT team found a gun under the blue-tarped car; the gun was in good condition and did not look like it had been outside long. During an interview that night, Cawthon initially denied seeing a gun but eventually admitted that he had found the gun in the garage, possessed it while in the driveway, and that it had just been "bad timing" that the SWAT team arrived. Neither Warner nor Livingston tested the gun for DNA or fingerprint evidence.

¶4        The State indicted Cawthon for, among other things, misconduct involving weapons, a class 4 felony, and alleged that he had historical prior felony convictions. Two weeks after the indictment, the State disclosed its intent to use his prison records to prove the prior felony convictions. Before the final management conference, the State disclosed that it would have an Arizona Department of Public Safety fingerprint technician testify about Cawthon's prior felony convictions, an essential element to the misconduct involving weapons claim under A.R.S.

§ 13–3102(A)(4). Cawthon moved to preclude the untimely disclosure, which the court granted. The court stated, however, that preclusion was not fatal to the State's case because it had timely disclosed Cawthon's "pen pack"—which is the collective Arizona Department of Correction's ("ADOC") record on an inmate and includes fingerprints, photographs, physical descriptions, criminal history, judgments, sentencing dates, other crimes committed, and where the inmate had been housed—and that the State could use it to establish Cawthon's prior felony convictions.

¶5        At trial, Warner identified Cawthon as the man he saw throw something under the blue-tarped car where the gun was found. The State then submitted the video of Cawthon admitting that he possessed the gun and stating that the SWAT team's arrival was just bad timing. Because Cawthon also admitted to possessing the gun, Warner did not get DNA or fingerprint evidence from the gun. He also examined a pen pack for Cawthon's criminal history information. The pen pack's fourth page was a notarized letter signed by the correctional records' clerk but had "Page 2" on its corner without a "Page 1" in the packet. The pen pack also contained a notarized "In-State Exemplification" sheet signed by the Offender Services Bureau ("OSB") administrator, attesting that the records were true and correct copies. When the State offered the pen pack into evidence, Cawthon objected, claiming that it contained inadmissible hearsay and that because the pen pack was not properly self-authenticated and no one from ADOC was going to testify to the records' authenticity, the public records exception to hearsay did not apply to it. The court overruled the objection but precluded the state disclosing to the jury the nature of Cawthon's prior felony convictions and required the State provide a redacted version.

¶6        In cross-examining Warner, Cawthon used a Google Earth image from three years after the raid. When Cawthon asked Warner to show where he was on the image and if his vision was obstructed, the State objected to the question and to publishing the image to the jury, arguing that Cawthon used the image as a late-disclosed exhibit and not as a demonstrative exhibit as he claimed. The State also argued that the image was irrelevant because it was taken in daylight three years later after the raid and the front yard had since been redone. The court sustained the objection, finding that because Cawthon used the exhibit to ask questions like "can you see through this, can you see through that," it was not being used as a demonstrative exhibit and did not allow him to publish it. Cawthon then questioned Warner using an admitted exhibit.

¶7        On redirect examination, Warner testified without objection that he had information that Cawthon was one of two living at the home.

Next, a criminal division operations manager at the Maricopa County Clerk of Court testified that the person in a photograph from Cawthon's pen pack looked like Cawthon and that he had a prior felony conviction in Maricopa County. The State admitted an affidavit from the Maricopa County Superior Court Clerk's Office that the court had not restored Cawthon's rights from the felony conviction. A detective who executed the search warrant testified that he had photographed the gun in the driveway and that it was in working condition. Livingston then testified that when the SWAT team arrived, Cawthon ducked, reached his right hand towards his waist, then moved his right arm forward in a tossing motion. Although he could not see Cawthon's right hand, he could see his arm making a distinct tossing motion. Livingston stated that although Cawthon at first denied ownership of the gun, he admitted to picking up the gun in the garage and possessing it on the driveway until the SWAT team arrived.

¶8        The State rested and Cawthon moved for a judgment of acquittal. He argued that the inconsistencies in Warner's and Livingston's testimonies—including where he stood when the SWAT team approached and whether he was holding something in his hand when he exited the garage—constituted reasonable doubt. He also argued that because the State lacked DNA or fingerprint evidence tying him to the gun, the State could not prove that he knowingly possessed the gun. Last, he argued that inconsistencies in the pen pack made it inadmissible and the jury therefore could not find that he had a prior felony conviction. The court denied the motion.

¶9        Cawthon then testified in his defense and admitted that he had a prior felony conviction and was a prohibited possessor. While he admitted to staying at the home a couple times and that his dog and her seven puppies lived there full-time, he mostly stayed at a motel. He said that on the night of the raid, he had just stopped by the home to check on his stuff and saw that someone had gone through his things in the garage. He stepped onto the driveway with the other man to inquire if that man knew who had rifled through his things. Five minutes later, the SWAT team appeared. He denied having known about or seen the gun.

¶10        On cross-examination, the State responded to Cawthon's inconsistent testimony by replaying his confession. Even after replaying the video, Cawthon testified inconsistently with his previous statements. Each time he did so, the State replayed a portion of his confession. After the fourth time, Cawthon objected, arguing that playing the video was needlessly cumulative and prejudicial; the trial court overruled the objection. The State then called Warner as a rebuttal witness. Warner

4

reiterated his testimony from re-direct that he had information that Cawthon lived at the home. Cawthon objected on the grounds of hearsay, which the court overruled.

¶11 The jury convicted Cawthon on one count of misconduct involving weapons. In his sentencing memorandum, Cawthon requested a mitigated six-year term of imprisonment because, among other things, he had a dysfunctional and troubled family history, including sexual abuse, and a recent family tragedy. At the sentencing hearing, the State argued that Cawthon's pen pack showed he had a prior felony conviction. After examining the unredacted pen pack and considering the evidence presented at the hearing, the trial court found that Cawthon indeed had a prior felony conviction but had proven a dysfunctional family background and a family tragedy as mitigating circumstances. The court therefore sentenced Cawthon as a repetitive offender to a mitigated term of 8 years' imprisonment under A.R.S. § 13–703(C) and credited him 70 days of presentence incarceration. Cawthon timely appealed.

## DISCUSSION

¶12 Cawthon argues that the court erred in (1) making its evidentiary rulings; (2) denying his Arizona Rule of Criminal Procedure ("Criminal Rule") 20 motion; and (3) sentencing him as a category three repetitive offender under A.R.S. § 13–703(C).

## I. The court's evidentiary rulings did not amount to reversible error.

¶13 Cawthon argues that the court erred in (1) admitting the pen pack at trial; (2) precluding him from using the Google Earth image as a demonstrative exhibit; (3) overruling his cumulative objection to the State's playing his police interview video; and (4) overruling his hearsay objection to Warner's rebuttal testimony that he had information that he lived at the home. We review the trial court's evidentiary rulings, including hearsay and related exceptions, for an abuse of discretion, *State v. Copeland*, 253 Ariz. 104, 114 ¶ 21 (App. 2022), but review de novo the court's interpretation of the Arizona Rules of Evidence ("Rule"), *State v. Johnson*, 247 Ariz. 166, 199–200 ¶ 127 (2019).

### A. The court did not err in admitting the pen pack.

¶14 Cawthon claims that the court erred in admitting the pen pack because it was not properly self-authenticated and therefore inadmissible hearsay. Hearsay is an out-of-court statement being used for the truth of the matter asserted, Rule 801, and is inadmissible unless an exclusion or

exception applies, Rule 802. The records and reports of public offices and agencies are one such exception. Rule 803(8). Because ADOC is statutorily required to maintain a master record file of each person committed to prison under A.R.S. § 13–221, the pen pack is admissible under the public records request if properly authenticated. *Id.*; *see also State v. King*, 213 Ariz. 632, 636 ¶ 11 (App. 2006).

**¶15** "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(a). This requirement is satisfied under Rule 901(b)(7)(B) for public records when evidence is submitted that "a purported public record or statement is from the office where items of this kind are kept." Certified copies of public records are self-authenticating under Rule 902(4), provided the record has the proper certification. *State v. Bennett*, 216 Ariz. 15, 16 ¶ 3 n.4 (App. 2007). The sufficiency of the foundation for the authentication of a document is within the trial court's discretion. *State v. Thompson*, 166 Ariz. 526, 527 (App. 1990).

**¶16** The pen pack that the State offered into evidence had two pages bearing notarized signatures. On the first page, the records clerk attested to the validity of the automated summary records for Cawthon, including the sentences imposed for his prior convictions. Second, the OSB administrator attested to the photograph, fingerprints, and other information were the Department's copies. The contents of the full pen pack were therefore self-authenticating as certified copies under Rule 902(4). *Bennett*, 216 Ariz. at 16, 18 ¶¶ 1, 8; *see also State v. Solis*, 236 Ariz. 242, 246 ¶ 11 (App. 2014) (in-state exemplification incorporates attached documents as being true and correct copies).

**¶17** Cawthon argues, however, that even assuming the pen pack was a self-authenticated document, it did not fall under the public records exception because the "source of the information or other circumstances indicate a lack of trustworthiness," citing Rule 803(8)(b). But Cawthon's name, inmate number, physical characteristics, and personally identifying information, including birthdate and social security number, were on the separate items of the packet. Based on the uniformity of information identifying Cawthon, the trial court did not err in finding the self-authenticated document trustworthy and admitting them as an exception to the rule against hearsay under Rule 803(8).

### B. The court did not err in precluding Cawthon's use of a Google Earth image as a demonstrative exhibit.

¶18            Cawthon argues that the court erred in precluding him from publishing the Google Earth image to the jury as a demonstrative exhibit. He argues that the Google Earth Street View function would have allowed the jury to see what Warner and Livingston would have seen on the night of the raid. The admission of maps, diagrams, as well as demonstrative exhibits to help the jury understand testimony, falls within the sound discretion of the trial court. *See State v. Doerr*, 193 Ariz. 56, 66 ¶ 47 (1998). "Demonstrative evidence is relevant if it illustrates or explains testimony presented at trial," *see State v. King*, 226 Ariz. 253, 256 ¶ 7 (App. 2011), and must be sufficiently similar to the conditions that existed at the time of the offense, *see State v. Mincey*, 130 Ariz. 389, 408 (1981); *see also State v. Burkheart*, 106 Ariz. 490, 491 (1970). The court found that Cawthon did not merely want to use the exhibit to illustrate or explain testimony, but to establish testimony. The court did not err.

¶19            Cawthon could show the jury the Google Earth image as a demonstrative exhibit to show the home's location in the neighborhood. He could not ask Warner specific questions about whether anything in the photo hindered his view, however. In doing so, Cawthon tried to elicit evidence through the photo rather than merely demonstrate what the evidence had already established. Even on appeal Cawthon claims that the court prejudiced him in cutting off the "line of questioning" about what Warner and Livingston did or did not see. Such questions made the image no longer demonstrative. Furthermore, the map and street view were not sufficiently similar to the conditions on the night of the raid. First, the image was taken about three years after the incident. Second, the image was taken in daylight. Last, the front yard and setting looked different from the night of the raid. Thus, the exhibit would not have aided the witness's testimony or the jury's understanding of the crime scene from the established evidence. *Mincey*, 130 Ariz. at 408. As a result, the trial court correctly determined that Cawthon's use was not demonstrative and therefore did not abuse its discretion in refusing its publication. *See King*, 226 Ariz. at 256 ¶ 7 (App. 2011).

### C. The court did not err in overruling Cawthon's objection to the State's playing his interview during his cross-examination.

¶20            Cawthon argues that the trial court erred by overruling his cumulative objection to the State's replaying his police interview. This court reviews the trial court's ruling on cumulative objections for an abuse of discretion. *See State v. Payne*, 233 Ariz. 484, 513 ¶ 118 (2013). A trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger" of "needlessly presenting cumulative evidence."

Rule 403. Cumulative evidence establishes a "point already proved by other evidence." *State v. Kennedy*, 122 Ariz. 22, 26 (App. 1979).

**¶21** The State replayed the video to impeach Cawthon's testimony and was therefore not cumulative. Cawthon repeatedly testified inconsistently with his statement to the police. The State had a right to impeach Cawthon, Rule 607, and could do so with the video of his prior inconsistent statements, Rule 801(d)(2) (opposing party's statements not hearsay); *see also* Rule 613 (witnesses' prior inconsistent statements). Such use was not cumulative. Moreover, even if replaying the video was cumulative, Cawthon has failed to show that he was prejudiced because its inclusion was harmless error. *State v. Williams*, 133 Ariz. 220, 226 (1982) (erroneous admission of evidence which is entirely cumulative constitutes harmless error); *cf. State v. Champagne*, 247 Ariz. 116, 145 ¶ 100 (2019) ("And even if the court abused its discretion in admitting the recording, it was not unduly prejudicial because . . . it was admitted by stipulation and thus could be considered by the jury regardless of whether it was played in open court.").

### D. The court properly overruled Cawthon's hearsay objection to Warner's testimony that Cawthon lived at the home.

**¶22** Cawthon argues that the trial court erred when it overruled his hearsay objection to Warner's rebuttal testimony that Cawthon lived at the home. "[I]f hearsay evidence is admitted without objection, it becomes competent evidence admissible for all purposes." *State v. Butler*, 230 Ariz. 465, 472 ¶ 25 (App. 2012). In re-direct examination, Warner said that he had information that Cawthon lived at the home. Indeed, Warner said that Cawthon was one of two people that lived there. Cawthon did not object and the evidence became admissible for all purposes. *Id.* at 472 ¶ 25. Because Cawthon did not object and the evidence was properly admitted, he waived his right to object during Warner's rebuttal testimony. *See State v. Lalonde*, 156 Ariz. 318, 319–20 (App. 1987) (holding hearsay objection meritless when witness's statement was introduced without objection and could not prevent the trier of fact from hearing subsequent evidence relevant to statement). Thus, the trial court did not err in overruling Cawthon's objection during Warner's rebuttal testimony. Because Cawthon has failed to show the trial court erred in its evidentiary rulings and has failed to prove he was prejudiced, we find no reversible error.

### II. The court properly denied Cawthon's Criminal Rule 20 motion.

**¶23** Cawthon next argues that after the close of the State's case, no reasonable juror could have found that Cawthon was guilty beyond a

reasonable doubt. We review de novo the trial court's Criminal Rule 20 ruling. *State v. Montes Flores*, 245 Ariz. 303, 308 ¶ 23 (App. 2018).

**¶24**　　　A trial court may enter a judgment of acquittal only if no substantial evidence warrants conviction. Criminal Rule 20; *State v. West*, 226 Ariz. 559, 561 ¶ 6 (2011). Substantial evidence exists when a reasonable person could find the essential elements of a crime beyond a reasonable doubt, viewing the evidence in a light most favorable to the prosecution. *Id.* at 563 ¶ 16; *State v. Davolt*, 207 Ariz. 191, 212 ¶ 87 (2004). If reasonable persons may fairly differ on whether certain evidence, including differing inferences to be drawn from the evidence, establishes a fact in issue, then such evidence must be considered as substantial. *Id.*; *see also West*, 226 Ariz. at 563 ¶ 18. A defendant who goes forward and presents a case waives any error if his case supplies evidence missing in the State's case. *State v. Nunez*, 167 Ariz. 272, 279 (1991).

**¶25**　　　Sufficient evidence shows that Cawthon committed misconduct involving weapons. Under A.R.S. § 13–3102(A)(4), a person commits misconduct involving weapons if the person (1) knowingly possessed a deadly weapon, and (2) was a prohibited possessor. A deadly weapon is "anything designed for lethal use, including a firearm." A.R.S. § 13–105(15). "Possession may be actual or constructive." *State v. Gonsalves*, 231 Ariz. 521, 523 ¶ 9 (App. 2013). "Actual possession means a defendant knowingly exercised direct physical control over an object." *Id*. "One who exercises dominion or control over property has constructive possession of it even if it is not in his physical possession." *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 363 ¶ 13 (App. 1998). A "prohibited possessor" means a person "[w]ho has been convicted within or without this state of a felony or who has been adjudicated delinquent for a felony and whose civil right to possess or carry firearm has not been restored." A.R.S § 13–3101(A)(7)(b).

**¶26**　　　The State presented ample evidence on both elements. First, the State provided video of Cawthon's acknowledgment that he had the gun on the driveway and that it was just "bad timing" when the SWAT team approached him. Warner and Livingston testified that when the SWAT team approached, Cawthon ducked and threw something towards where the gun was found. Warner and Livingston's testimony along with Cawthon's incriminating statement provided sufficient evidence that Cawthon actually possessed the gun. *See Gonsalves*, 231 Ariz. at 523 ¶ 9 (actual possession is direct, physical control of an object). Also, Warner testified that Cawthon said that he kept his property in the garage and that he lived at the home. This evidence, along with Cawthon's testimony that the gun came from the garage, was sufficient to show that Cawthon

constructively possessed the gun. *Chabolla-Hinojosa*, 192 Ariz. at 363 ¶ 13 (a person who exercises dominion or control over property has constructive possession of it). Second, not only did Cawthon testify that he was a prohibited possessor, his pen pack showed that he was a convicted felon and did not have his rights restored. This was sufficient evidence that he was a prohibited possessor.

¶27 Cawthon nevertheless argues that the only evidence tying him to the gun was his incriminating statements, since no forensic evidence—i.e., DNA or fingerprint—was taken from the gun. As a result, he argues that the doctrine of corpus delicti required the court grant his Criminal Rule 20 motion. That doctrine precludes the admission of a defendant's confession unless the State admits evidence from which the jurors could infer that the confessed crime actually occurred. *State v. Carlson*, 237 Ariz. 381, 387 ¶ 8 (2015). The evidence need only show a "reasonable inference" that the crime occurred. *Id.* Circumstantial evidence can support such an inference. *State v. Morris*, 215 Ariz. 324, 333 ¶ 34 (2007). Appellate courts review sufficiency of the evidence for corpus delicti purposes for an abuse of discretion standard. *Id.* at ¶ 34.

¶28 The State presented sufficient evidence for the jurors to reasonably infer that the crime of misconduct involving weapons had occurred. Warner and Livingston testified that they saw Cawthon leave the garage with another individual and stand near the tarp-covered car. When the SWAT team approached, both saw Cawthon duck and toss an object towards where the SWAT team found a gun. Although Cawthon points to discrepancies in Warner's and Livingston's testimonies, their material commonalities provided a reasonable inference that Cawthon had possessed the gun. *See Morris*, 215 Ariz. at 333 ¶ 34.

## III. The trial court properly sentenced Cawthon as a category three repetitive offender.

¶29 Cawthon argues that the trial court improperly sentenced him as a category three repetitive offender after it allowed the State to untimely provide the pen pack at sentencing. We review the trial court's admission of evidence of prior convictions and resulting sentencing order for an abuse of discretion, *see State v. Newnom*, 208 Ariz. 507, 507 ¶ 3 (App. 2004) (prior convictions); *State v. Vermuele*, 226 Ariz. 399, 403 ¶ 15 (App. 2011) (sentencing), as we do its sanction ruling for untimely disclosures, *State v. Moody*, 208 Ariz. 424, 454 ¶ 114 (2004). The trial court abuses its discretion when "no reasonable judge would have reached the same result under the

circumstances." *State v. Naranjo*, 234 Ariz. 233, 242 ¶ 29 (2014) (internal quotations omitted).

**¶30**        Under Criminal Rule 15.1(b)(6) and (c), the State must provide a list of all prior felony convictions it intends to use at trial within 30 days after arraignment. The State alleged historical prior felony convictions for enhancement purposes less than two weeks after the indictment. The day after that, it disclosed that it might use the pen pack to prove those priors. Cawthon already had the unredacted pen pack. Although the court had thought that the pen pack was admitted for the limited purpose of establishing an element in the guilt phase, the entire pen pack had been disclosed long before the hearing and the State said that it would use such evidence in the aggravation phase. Thus, the pen pack was not untimely disclosed.

**¶31**        Even if the pen pack had been untimely disclosed, the court did not err in admitting it. The trial court has "great discretion" in sanctioning a party for untimely disclosure. *State v. Mesa*, 203 Ariz. 50, 55 ¶ 19 (App. 2002). In determining sanctions, "a court must determine the significance of the information not timely disclosed, the violation's impact on the overall administration of the case, the sanction's impact on the party and the victim, and the stage of the proceedings when the party ultimately made the disclosure." Criminal Rule 15.7(c). The sanction "should be proportionate to the harm caused" and "cure that harm to the maximum practicable extent." *State v. Krone*, 182 Ariz. 319, 322 (1995).

**¶32**        This court in *State v. Ramos* presented two components that render preclusion for untimely disclosure proper: willfulness and prejudice. 239 Ariz. 501, 504 ¶ 9 (App. 2016). Neither are present here. Cawthon's own sentencing memorandum belies any claimed prejudice as it conceded that he faced the 10-year presumptive term and had prepared extensive mitigation material. And the State had disclosed the unredacted pen pack, along with other disclosures, long before trial and sentencing. The court and parties' confusion over whether the pen pack had been disclosed for sentencing purposes is not willful nondisclosure: Cawthon always had the evidence. As a result, the court did not abuse its "great discretion" in admitting the pen pack. *Mesa*, 203 Ariz. at 55 ¶ 19.

## CONCLUSION

¶33        For the reasons stated, we affirm Cawthon's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:    AA