NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER ESPARZA RAMIREZ, *Appellant.*

No. 1 CA-CR 25-0364

FILED 06-24-2026

Appeal from the Superior Court in Yuma County
No. S1400CR202000311
The Honorable Darci D. Weede, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Karen Moody and Lily Sklar (Certified Limited Practice Student)
*Counsel for Appellee*

Ramos Law Firm, Scottsdale
By Paul A. Ramos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

---

**C A T L E T T**, Judge:

¶1		Christopher Esparza Ramirez ("Ramirez") appeals his convictions for possessing a dangerous drug and possessing drug paraphernalia involving methamphetamine. Because the superior court did not err by not instructing the jury on mere presence, and because sufficient evidence supports that Ramirez possessed a dangerous drug, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2		We view the facts most favorably to upholding the jury's verdict. *State v. Reaves*, 252 Ariz. 553, 558 ¶ 2 (App. 2022).

¶3		In March 2020, federal and state law enforcement involved in a narcotics task force executed a search warrant at Ramirez's residence. They arrived shortly after midnight and entered the backyard through a gate. As they did so, a deputy sheriff observed an individual (who was not Ramirez) approaching as if trying to leave. The deputy sheriff instructed that individual to get on the ground. Another officer detained and remained with that individual (who had a glass pipe in his pocket) as the deputy sheriff went into the backyard.

¶4		The deputy sheriff walked around the rear of the residence and toward Ramirez's room. He saw Ramirez standing halfway in his doorway with one hand "clutched like a fist" holding "something that was kinda protruding," but the deputy sheriff did not see what the object was. A police sergeant testified that he observed Ramirez with "a shopping bag kind of hanging down" in his hand.

¶5		The deputy sheriff instructed Ramirez to exit his room. Ramirez began doing so but then reversed course. Concerned about the "unknowns" of the room, the deputy sheriff "grabbed" Ramirez's shirt and pulled him out. The deputy sheriff moved Ramirez towards a patio area but felt Ramirez "redirect[] himself" to a "cesspool area" in the backyard, about ten feet from the door. Ramirez's shirt began to rip as he continued

toward the cesspool, which smelled "putrid" and contained "human excrement, urine, and water." A police sergeant described Ramirez as "lunging" toward the cesspool.

¶6        Officers struggled to handcuff Ramirez. The deputy sheriff testified Ramirez wrapped his arms around a pole and put his "clinched" hands in the cesspool "like, he was holding something in both hands." The police sergeant testified that Ramirez moved his hand toward his "waistband area." The officers struggled to handcuff Ramirez. After doing so, the deputy sheriff searched the area and found a plastic "bindle" containing a substance "[r]ight next to" the cesspool. The deputy sheriff explained that a bindle looks like a grocery store bag, and it typically is used to carry drugs. The deputy sheriff also explained that a "ziplock-style bag" containing a "white crystalline substance" was found in the cesspool. The bag was "a little wet" and the substance inside looked like it had mixed with water.

¶7        A federal agent confirmed that law enforcement found two bags in the backyard, including one retrieved from the cesspool. Both bags tested positive for methamphetamine. Law enforcement recovered a straw "with a white crystalline substance" in Ramirez's room and a glass pipe on his couch. A field test on residue in the glass pipe returned positive for methamphetamine. A pole in the cesspool had "multiple baggies" believed to contain narcotics hanging from it.

¶8        The federal officer testified he did not see Ramirez throw anything into the cesspool. Neither the deputy sheriff nor the police sergeant remembered seeing Ramirez drop anything. Ramirez's sister testified she saw the other individual officers encountered take something out of his pants, throw it into the "septic tank," and then walk toward the side of the house.

¶9        Before trial, Ramirez filed proposed jury instructions, including a mere presence instruction. When the parties discussed final jury instructions at trial, the State argued a mere presence instruction was unsupported. Ramirez agreed that "based on where some of the evidence was found at the crime scene" he was "not objecting to removing that instruction." So the court did not instruct on mere presence, but it did instruct the jury on third-party culpability and finding a voluntary act.

¶10        The jury found Ramirez guilty of possessing a dangerous drug and possessing drug paraphernalia involving methamphetamine. The jury found Ramirez not guilty of tampering with physical evidence.

The court sentenced Ramirez to 6 years for possessing a dangerous drug and 2.25 years for possessing drug paraphernalia, to run concurrently.

¶11　　　　　Ramirez appealed timely.　We have jurisdiction.　*See* A.R.S. § 13-4033(A)(1).

## DISCUSSION

### I.　　Mere Presence Instruction

¶12　　　　　Ramirez argues the court erred by not instructing the jury on mere presence.　He concedes he did not object at trial to removing a mere presence instruction, so we should review for fundamental error.　The State argues Ramirez invited any error because he "verbally assented to removing the mere-presence instruction[.]"

¶13　　　　　To show fundamental error, an appellant must show trial error.　*State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018).　If error occurred, an appellant must also show the error was fundamental because it (1) went to the foundation of the case, (2) took away an essential right necessary to demonstrate a viable defense or rebut the prosecution's case, or (3) was so egregious that he could not possibly have received a fair trial.　*Id.* at 141–42 ¶¶ 18–21.　Finally, when an appellant relies on prong one or two, he must separately show prejudice.　*Id.* at 142 ¶ 21.　"The [appellant] bears the burden of persuasion at each step."　*Id.*

¶14　　　　　But when an appellant invited error, even "strategically[,] . . . the defendant cannot obtain appellate relief even if the error was fundamental and prejudicial."　*Id.* at 145 ¶ 38.　"The invited error doctrine prevents a party from injecting error into the record and then profiting from it on appeal."　*State v. Rushing*, 243 Ariz. 212, 217 ¶ 14 (2017).　For invited error to apply, the record must demonstrate the defendant "engaged in affirmative, independent action to create the error or argue in favor of it."　*State v. Robertson*, 249 Ariz. 256, 260 ¶ 18 (2020).

¶15　　　　　The Revised Arizona Jury Instruction ("RAJI") on "mere presence" states the following:

> Guilt cannot be established by the defendant's mere presence at a crime scene, mere association with another person at a crime scene or mere knowledge that a crime is being committed.　The fact that the defendant may have been present, or knew that a crime was being committed, does not in and of itself make the defendant guilty of the crime

charged. One who is merely present is a passive observer who lacked criminal intent and did not participate in the crime.

Rev. Ariz. Jury Instr. Stand. Crim. 43 (6th ed. 2025). The court may decline to instruct on mere presence if "the evidence d[oes] not support it." *State v. Doerr*, 193 Ariz. 56, 65 ¶ 36 (1998).

**¶16** On appeal, Ramirez contends he had a "right to argue that guilt could not be established by the factors described in the mere presence instruction" and that the court "took away" that right. But that contradicts what he told the superior court. He told the court "based on where some of the evidence was found at the crime scene" he was "not objecting to removing" a mere presence instruction. Put differently, Ramirez said he did not object to removing the instruction because the evidence did not support it. *See id.* By doing so, Ramirez invited the error he now argues on appeal. *See State v. Logan*, 200 Ariz. 564, 565–66 ¶ 9 (2001) ("If an error is invited, we do not consider whether the alleged error is fundamental[.]"); *State v. Dutton*, 106 Ariz. 463, 466 (1970) (refusing to consider a defendant's argument on appeal that the jury instructions requested by the defendant at trial misstated the law).

**¶17** Even if Ramirez had not invited any alleged error, he has not established that the court committed prejudicial, fundamental error in declining to instruct on mere presence. *See Escalante*, 245 Ariz. at 141–42 ¶¶ 18–21. The court gave the following instruction on third-party culpability:

> The State has the burden of proving that the defendant is the person who committed the alleged crime[s]. If you have a reasonable doubt whether the defendant committed the alleged crime[s] because the crime may have been committed by a third party, you must find the defendant not guilty.

**¶18** That instruction acknowledged Ramirez's defense theory at trial that "another person was present" who "actually committed the possession crimes." Part of Ramirez's closing argument focused on the individual the officers first encountered in the backyard. He told the jury that if they thought "the crime may have been committed by a third party[,] . . . you must find [Ramirez] not guilty." Based on that argument, the court instructed the jury on third-party culpability.

**¶19** The court also defined a "voluntary act." That informed the jury that the State needed to prove Ramirez performed a bodily movement

"consciously" and that they "must consider all the evidence in deciding whether [Ramirez] committed the act voluntarily." That instruction supplemented the court's other instructions on the elements of the crimes, including knowledge and possession.

**¶20** Although Ramirez was "entitled to an instruction on any theory reasonably supported by the evidence," the superior court was "not required to give a proposed instruction when its substance [was] adequately covered by other instructions." *State v. Rodriguez*, 192 Ariz. 58, 61 ¶ 16 (1998). That happened here when the court instructed on third-party culpability and voluntary acts. By doing so, the court ensured the jury would not find Ramirez guilty simply because officers found methamphetamine near him. Ramirez has not shown the court erred, let alone that any error was fundamental and prejudicial. *See Escalante*, 245 Ariz. at 141–42 ¶¶ 18–21; *State v. Crain*, 250 Ariz. 387, 397 ¶ 33 (App. 2021) ("By finding [the defendant] knowingly possessed the handgun, the jury implicitly rejected his assertion that he was merely present.").

## II. Sufficiency of Evidence

**¶21** Ramirez also contends there was insufficient evidence supporting his conviction for possessing a dangerous drug. We review de novo whether the record contains substantial evidence supporting that conviction. *State v. Pena*, 235 Ariz. 277, 279 ¶ 5 (2014). Substantial evidence is proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Pena*, 209 Ariz. 503, 505 ¶ 7 (App. 2005) (citation omitted). Substantial evidence can include circumstantial or direct evidence. *Id.* Again, we view the facts most favorably to affirming the verdict, resolving all reasonable inferences against Ramirez. *See State v. Gill*, 248 Ariz. 274, 276 ¶ 2 (App. 2020).

**¶22** The jury found Ramirez guilty of possessing a dangerous drug. *See* A.R.S. § 13-3407(A)(1). Methamphetamine is a dangerous drug. A.R.S. § 13-3401(6)(c)(xxxviii). Possession means voluntarily and knowingly "exercis[ing] dominion or control over property." A.R.S. § 13-105(35). Possession can be actual or constructive. *State v. Gonsalves*, 231 Ariz. 521, 523 ¶ 9 (App. 2013). Actual possession means "knowingly exercis[ing] direct physical control over an object." *Id.* Constructive possession means control over the drug itself or the location where it was found. *Gill*, 248 Ariz. at 277 ¶ 7. Knowledge means "a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b). To convict, the State had to show "specific

facts or circumstances that [Ramirez] exercised dominion or control over the object." *Gonsalves*, 231 Ariz. at 523 ¶ 10 (cleaned up).

¶23     Ramirez says "[n]o drugs were found" on him because the bindle was found only near him, no one saw him put anything in the cesspool, and his sister testified she saw another individual throw something into the cesspool. But Ramirez ignores other evidence the State presented. A deputy sheriff testified he saw Ramirez with "something that was kinda protruding" out of his hand, and a police sergeant testified he saw Ramirez with "a shopping bag kind of hanging down." Both the deputy sheriff and police sergeant saw Ramirez move toward the cesspool, and the deputy sheriff testified he saw Ramirez put his hands into the cesspool with "both hands clinched . . . like, he was holding something in both hands."

¶24     None of the officers said they saw Ramirez drop anything, but there was a skirmish and physical altercation while officers attempted to handcuff Ramirez. The jury heard testimony that after officers handcuffed Ramirez, the deputy sheriff found a plastic bindle containing a dangerous drug "[r]ight next to" him. And that a "ziplock-style bag" containing a "white crystalline substance" was found in the cesspool. Despite testimony from Ramirez's sister, the jury could infer from the officers' testimony that Ramirez dropped the bindle and bag during the altercation with law enforcement. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995) (finder of fact, not appellate court, determines witness credibility). The jury also heard testimony that both bags and the glass smoking pipe found on Ramirez's couch contained methamphetamine. The evidence at trial was more than sufficient for a jury to conclude that Ramirez possessed a dangerous drug.

**CONCLUSION**

¶25     We affirm Ramirez's convictions and sentences.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR